ANTHONY ZACCARDI AND EUGENIA J. ZACCARDI, HIS WIFE, PLAINTIFFS-APPELLANTS, v. GEORGE L. BECKER, M.D., AND JEROME BELLET, M.D., DEFENDANTS-RESPONDENTS, AND ST. JOSEPH'S HOSPITAL, DEFENDANT.

Argued September 22, 1981—Decided January 27, 1982.

246

*Thomas J. Osborne, Jr.*, argued the cause for appellants (*Vaccaro, Osborne & Curran*, attorneys).

*Richard E. Brennan* argued the cause for respondents (*Shanley & Fisher*, attorneys; *Richard E. Brennan* and *John D. Clemen*, on the briefs).

The opinion of the Court was delivered by

PASHMAN, J.

This case presents two separate questions. First, when does a plaintiff's failure to answer interrogatories result in the dismissal of his case with prejudice? Second, if such a dismissal is without prejudice, when is a second complaint barred by the statute of limitations? Under the special circumstances presented here, we hold that the prior complaint was not dismissed with prejudice and that defendants are not entitled to assert the statute of limitations as an affirmative defense. We reverse the contrary judgment of the Appellate Division and remand to the trial court for further proceedings.

## I

This is the second suit brought by plaintiffs against two defendant doctors [1] to recover damages for alleged medical malpractice in connection with treatment rendered to plaintiff Anthony Zaccardi from 1974 to 1975. The complaint in the first suit, identical to the complaint in this case, was filed in January 1976. On July 28, 1976 the trial court dismissed the complaint

---

[1]Defendant St. Joseph's Hospital was dismissed as a party by stipulation dated March 26, 1979.

under *R.* 4:23–5(a) for plaintiffs' failure to answer defendants' interrogatories. For 17 months, despite the dismissal, the case remained on the docket and was adjourned for discovery at least ten times. Plaintiffs did not apprise the trial court of the earlier dismissal, and defendants did not object to the repeated adjournments. Finally, on December 28, 1977, plaintiffs moved to vacate the dismissal and asked for a 60-day extension for discovery. The trial court granted the motions in February 1978. In September 1978 the Appellate Division reversed and reinstated the order of dismissal, without explicitly determining whether such dismissal had been with prejudice. We denied certification. *Zaccardi v. Becker,* 162 *N.J.Super.* 329 (App.Div.), certif. den., 79 *N.J.* 464 (1978) (*Zaccardi I*).

On November 17, 1978, one month before the Supreme Court denied certification in *Zaccardi I*, plaintiffs filed a new complaint that was identical to the first. The trial court dismissed the second complaint, holding that the dismissal in *Zaccardi I* had been final and that the applicable limitations period had run. The Appellate Division affirmed. We granted plaintiffs' petition for certification on November 25, 1980.

## II

The first issue in this case is the standard to be applied in determining when a dismissal for failure to answer interrogatories bars the filing of a new complaint.

*R.* 4:17–4(b) gives a party 60 days within which to answer interrogatories. *R.* 4:23–5(a) provides that if timely answers are not served, "and no formal motion for an extension has been made pursuant to *R.* 4:17–4(b) * * *," the complaint can be dismissed upon *ex parte* application by the party entitled to the answers within 60 days of the default.[2] Under this scheme,

---

[2]*R.* 4:23–5(a) provides:

If timely answers to interrogatories are not served and no formal motion for an extension has been made pursuant to *R.* 4:17–4(b), the complaint,

dismissal for failure to answer interrogatories is without prejudice, since it is based on an *ex parte* application. *See Schlosser v. Kragen,* 111 *N.J.Super.* 337, 344 (Law Div.1970).

Dismissal is not necessarily final since the delinquent party may move to vacate the dismissal within 30 days after service of the dismissal order, provided that the delinquent party furnishes fully responsive answers to the interrogatories and pays $50 costs to the Clerk of the Superior Court. *R.* 4:23–5(a).

Upon motion, the court has discretion whether or not to vacate the dismissal. Normally, when the motion is made within the 30-day limit and all other requirements are met, the motion will be allowed. However, vacation of the dismissal will be disfavored if the delinquent party has failed to comply with the 30-day limit without having moved for an extension of time under *R.* 4:17–4(b). Failure to move to vacate the dismissal within the 30-day limit set by *R.* 4:23–5(a) does not *by itself* bar vacation of the dismissal. *Id.* at 345–46. The court has discretion to relax the 30-day limit pursuant to *R.* 1:1–2 to prevent injustice.

Nonetheless, the 30-day limit should be relaxed very sparingly. Routinely allowing attorneys to ignore the time limits in *R.* 4:23–5(a) would subvert the policy of encouraging expeditious discovery. Attorneys cannot avoid these limits without satisfactory reasons. Moreover, since it is possible to move for an

counterclaim or answer of the delinquent party shall be dismissed or stricken by the court upon the filing by the party entitled to the answers of an affidavit stating such failure within 60 days from the date on which said answers became due. Thereafter such relief may be granted only by motion. The affidavit shall have annexed thereto a form of order of dismissal or suppression. A copy of all such orders with affidavits annexed shall be served upon the delinquent party within 7 days after the date thereof. On formal motion made by the delinquent party within 30 days after service upon him of the order, the court may vacate it, provided fully responsive answers to the propounded interrogatories are presented and the delinquent party pays costs in the amount of $50.00 to the Clerk of the Superior Court.

extension of time to answer interrogatories under *R.* 4:17–4(b), there must be good reason for relaxation of the rule. As the Appellate Division observed in *Zaccardi I*,

> [i]f our discovery rules are to have any meaningful effect upon calendar control and the early disposition of litigation, they must be adhered to unless, for good cause shown, they are relaxed under *R.* 1:1–2. The imposition of the severe sanction of dismissal is imposed not only to penalize those whose conduct warrant it, but to deter others who may be tempted to violate the rules absent such a deterrent. [162 *N.J.Super.* at 332]

 Attorneys must comply with the time limits in the procedural rules in order to further the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation. *See id.* at 332–33; *Gnapinsky v. Goldyn*, 23 *N.J.* 243, 247–48 (1957). The Appellate Division in *Zaccardi I* rightly refused to vacate the original dismissal 17 months after it was ordered.

When a party moves to vacate a dismissal, a second issue arises. Not only must the court decide whether to vacate the dismissal, but, if it is not vacated, the court must decide whether the dismissal is to be with prejudice. These two decisions are logically independent, and the policy considerations behind each decision are somewhat different. We now address the standard to be applied in determining whether a second complaint should be barred. This is the first time we have addressed this issue in the context of the current *R.* 4:23–5(a).

Competing policies are involved in disputes over procedural questions such as this. The defendant's right to have the plaintiff comply with procedural rules conflicts with the plaintiff's right to an adjudication of the controversy on the merits. *Crews v. Garmoney*, 141 *N.J.Super.* 93, 96 (App.Div.1976).

 Because of these competing policies, and because of the varying levels of culpability of delinquent parties, a range of sanctions is available to the trial court when a party violates a

court rule.[3] *Gnapinsky v. Goldyn*, 23 *N.J.* at 247–48. *See, e.g.,*
*R.* 4:23–2, –4. Thus, although it is the policy of the law that
discovery rules be complied with, it is also the rule that drastic
sanctions should be imposed only sparingly. *Lang v. Morgan's*
*Home Equipment Corp.*, 6 *N.J.* 333, 339–40 (1951); *Schlosser v.*
*Kragen*, 111 *N.J.Super.* at 341. Since dismissal with prejudice is
the ultimate sanction, it will normally be ordered only when no
lesser sanction will suffice to erase the prejudice suffered by the
non-delinquent party, *see id.* at 346; *Savoia v. Woolworth*, 88
*N.J.Super.* 153, 160–61 (App.Div.1965); *Gnapinsky v. Goldyn*, 23
*N.J.* at 248, or when the litigant rather than the attorney was at
fault, *Schlosser v. Kragen*, 111 *N.J.Super.* at 346; *Savoia v.*
*Woolworth*, 88 *N.J.Super.* at 161.

Thus, dismissal for failure to answer interrogatories
should not ordinarily bar the plaintiff from filing a new com-
plaint within the statute of limitations. *W. Milford Tp. Bd. of*
*Ed. v. Rockwell Mfg. Co.*, 173 *N.J.Super.* 506, 508 (Law Div.
1980). However, when a second complaint is filed, the trial
judge in the second case may, if he deems it equitable, dismiss
the second complaint, even though the first complaint was
dismissed without prejudice. Because of the severity of the
sanction, it should be used only sparingly. It would be appropri-
ate only when the second complaint was filed merely to harass
the defendant, when the delay has so prejudiced the defendant
that his ability to defend his case is seriously impaired, or when
other substantial equitable considerations suggest dismissal. It
should be remembered that dismissal of the second complaint

---

[3]The pre-1964 rule, *R.* 4:27–4, explicitly listed a variety of possible sanc-
tions, including any action that the court deemed "advisable." The current
rule, although it does not contain a list of possible sanctions, does not
explicitly limit the power of the court to a choice between imposing the
ultimate sanction of dismissal with prejudice or imposing no sanction at all.
The purpose of the rule change was to force the delinquent party to move for
a reopening of the case, *Schlosser v. Kragen*, 111 *N.J.Super.* at 343–44, and
not to strip the court of the power to equitably adjust the controversy by less
drastic sanctions when appropriate.

will deprive a plaintiff of an adjudication on the merits. *See Central R. R. v. Neeld*, 26 *N.J.* 172, 177 (1958) (holding that doctrine of *res judicata* does not normally come into play where the parties have not had an adjudication on the merits).

The complaint in *Zaccardi I* was dismissed without prejudice. Dismissal for failure to comply with a court rule or order shall be without prejudice unless the order specifically states that it is to be with prejudice. *R.* 4:37–2(a). *See W. Milford Tp. Bd. of Ed. v. Rockwell Mfg. Co.*, 173 *N.J.Super.* at 508. Mere language in the judicial opinion of strong disapproval of misconduct or delay is not enough to convert a "dismissal" to a "dismissal with prejudice." Since the order in *Zaccardi I* did not explicitly specify that it was with prejudice, a new complaint was not barred by that decision.

We turn therefore to the question of whether the second complaint should be barred on equitable considerations. Plaintiffs' inordinate delay in this case in moving to vacate the dismissal and their failure to bring the dismissal to the court's attention are highly improper. This is particularly true in light of the fact that despite the dismissal, the case remained on the docket. Plaintiffs' attorneys had numerous opportunities to bring the prior dismissal to the court's attention. Justice Weintraub stated in *Gnapinsky v. Goldyn*,

> The rules of court are designed to expedite litigation and are intended for the equal benefit of all parties.... There are situations in which relief from the prescribed timetable is warranted, ... [b]ut the discretion is to be exercised by the courts and not by the unilateral decision of counsel for one of the parties. [23 *N.J.* at 247–48]

Even though plaintiffs appeared in court seeking adjournments of the case, they failed to advise the court that it had been dismissed.

In the ordinary case, such a course of conduct warrants appropriately severe sanctions.

> [I]t is necessary that there be adequate provisions for the enforcement of the rules as to discovery against those who fail or refuse to comply. Sanctions are peculiarly necessary in matters of discovery and the power to invoke them is inherent in our courts. [*Lang v. Morgan's Home Equipment Corp.*, 6 *N.J.* at 338]

Counsel should be admonished for his disregard of the rules of court. No attorney should assume that despite his failure to comply with the rules, the Court will allow the case to proceed. *Gnapinsky v. Goldyn*, 23 *N.J.* at 256 (Vanderbilt, C.J., dissenting). In the absence of adequate justification, these factors presented a strong case for dismissal of this complaint with prejudice. However, there are mitigating circumstances.

Although plaintiffs' attorney acted wrongfully in failing to bring the dismissal to the court's attention, defendants had notice of the many adjournments and contributed to the delay by not notifying either plaintiffs or the court that they objected to the adjournments. Under the circumstances, plaintiffs could reasonably have believed that defendants impliedly consented to the continuation of the case as an ongoing controversy. Equitable considerations consequently do not require dismissal of this second complaint.

We therefore conclude that plaintiffs' second complaint should not be barred on equitable grounds.

### III

The second issue in this case is whether defendants are entitled to assert the statute of limitations as an affirmative defense to bar plaintiffs' second complaint. The first complaint was filed on January 20, 1976. It alleged that the wrong had been committed on March 12, 1974, and was thus filed within the two-year limitation period. The complaint was dismissed on July 28, 1976 for failure to answer interrogatories. For the next 17 months, however, the case was repeatedly adjourned and remained on the active trial calendar until plaintiffs' motion to vacate the dismissal was granted by the trial court on February 10, 1978. Approximately two months after the Appellate Division reversed the vacation of the dismissal on September 28, 1978, and several weeks before the Supreme Court denied certification, plaintiffs filed a second complaint, identical to the first, which is the subject of the present appeal.

At the outset we note that statutes of limitations are not self-executing. Such statutes are based on the goals of achieving security and stability in human affairs and ensuring that cases are not tried on the basis of stale evidence. *Galligan v. Westfield Centre Service*, 82 *N.J.* 188, 191–92 (1980); *Tevis v. Tevis*, 79 *N.J.* 422, 430 (1979); *Kaczmarek v. N. J. Turnpike Authority*, 77 *N.J.* 329, 337–38 (1978). Because they are based on these specific policies, they must be raised as affirmative defenses, subject to judicial modification in appropriate circumstances. Mechanistic application of such statutes could unnecessarily sacrifice individual justice in particular circumstances.

> A just accommodation of individual justice and public policy requires that in each case the equitable claims of opposing parties must be identified, evaluated and weighed. Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim. [*Galligan*, 82 *N.J.* at 193 (citations omitted)]

*See Kaczmarek v. N. J. Turnpike Authority*, 77 *N.J.* at 338; *White v. Violent Crimes Compensation Board*, 76 *N.J.* 368, 379 (1978); *Farrell v. Votator Div. of Chemetron Corp.*, 62 *N.J.* 111, 121 (1973).

In light of these considerations, this Court has often rejected a limitations defense where defendant has contributed to the delay. We have stated:

> [S]tatutes of limitations are characteristically considered to be tools of repose. They require that alleged rights be timely asserted and thereby operate to prevent unjust claims. They obviate the difficulties in defending actions against such claims .... Where, however, the bar is used primarily as a sword rather than a shield and by one who has been responsible to disclose the actionable essentials in the face of a duty to speak, factors of vicarious enrichment become a dominant consideration which we are prone to remedy in equity and good conscience. [*State v. United States Steel Corp.*, 22 *N.J.* 341, 358–59 (1956)]

We have disallowed limitations defenses in a variety of situations because of defendant's inequitable conduct. For example, in *United States Steel*, we rejected an otherwise valid statute of limitations defense because the defendant failed to fulfill a legal duty to notify the State of escheatable property in its possession. *Id.* at 360. *See Peloso v. Hartford Insurance Co.*, 56 *N.J.* 514 (1970); *Friedman v. Friendly Ice Cream Co.*, 133 *N.J.Super.* 333

(App.Div.1975) (both holding that defendant insurer who uses settlement negotiation to lull plaintiff into delaying the filing of an action is estopped from asserting expiration of the limitation period); . cf. *Barres v. Holt, Rinehart and Winston, Inc.*, 131 *N.J.Super.* 371 (Law Div.1974), aff'd o. b., 141 *N.J.Super.* 563 (App.Div.1976), aff'd o. b., 74 *N.J.* 461 (1977) (although defendant publisher successfully raised statute of limitations defense, plaintiff permitted to amend his complaint to seek equitable relief against the publisher if he obtained a judgment against co-defendant author).

Although not identical to these cases, the instant appeal is sufficiently similar to require the application of equitable principles to estop defendants from raising the statute of limitations as an affirmative defense. It is clear that the second complaint in this case was brought more than two years after the date on which the wrong was allegedly committed. Thus, if that fact alone were determinative, the second complaint would be barred by the statute of limitations. *N.J.S.A.* 2A:14–2. However, under the cases noted above, defendant's conduct is relevant to the availability of a statute of limitations defense. In this case, an identical previous complaint had been timely filed. Defendants were well aware that plaintiffs' first complaint had been dismissed in July 1976 for failure to answer interrogatories. Nevertheless, for the following 17 months, while the case remained on the trial calendar of the Superior Court and was actually adjourned for discovery at least ten times, defendants took no steps to inform the court that the case had been dismissed or to object to the adjournments. Rather, they added to the delay while plaintiffs acted under the reasonable misapprehension that the defendants had agreed to the continuation of the case. In fact, defendants did not question the pendency of the lawsuit until plaintiffs moved to vacate the dismissal. Then for the first time defendants argued that plaintiffs' case had been dismissed with finality. This contention was inconsistent with defendants' conduct over the preceding year and a half. We believe defendants' counsel was under

a duty to bring to the trial court's attention the fact that a case on the trial calendar had already been dismissed. Having thus significantly contributed to the delay in adjudicating this case, he cannot now claim on behalf of his clients that the case is stale and ought not to be heard.

We recognize that this ruling works a hardship on defendants, who appear to be no more culpable for their attorney's lapses than plaintiffs are for theirs. Nonetheless, we conclude that under the facts of this case, the interests of plaintiffs in an adjudication on the merits must outweigh the defendants' right to assert the statute of limitations. Given the series of adjournments and the process of appellate litigation which followed the motion to vacate the dismissal, it appears that the case has remained alive. Because the initial complaint was timely filed, defendants have had adequate warning to prepare their defense. Moreover, the second complaint was brought even though appellate litigation involving the first complaint was still in progress. Viewed in this light, it seems that the second complaint was brought as soon as possible—if not prematurely—since there was pending appellate litigation concerning the first complaint.

In a concurring and dissenting opinion, Justice Schreiber concludes, on the basis of a case decided in New Jersey in 1841, that the statute of limitations is not tolled between the time of the filing of the first complaint in January 1976 and its dismissal in July 1976. Our colleague states that tolling in this case is based on circumstances which admittedly did not occur until after the dismissal of the first complaint. We agree that if the only issue were defendants' actions, this second complaint would be barred by the statute of limitations on precisely the grounds advanced by Justice Schreiber.

However, that is not the law in New Jersey. While it may be true that the statute of limitations continues to run after a complaint is filed, *Ivins v. Schooley*, 18 *N.J.L.* 269 (Sup.Ct.1841), it is no longer the case that such statutes are mechanistically applied. It is now well settled in New Jersey

that statutes of limitation will not be applied when they would unnecessarily sacrifice individual justice under the circumstances.[4] If plaintiffs had filed a second complaint in July 1976, at the time the first complaint was dismissed, we would have allowed the case to proceed on precisely those grounds. Since the first complaint was timely filed, defendants would have had adequate warning to prepare their defense and there would have been no danger of trying the case on stale evidence. *Galligan v. Westfield Centre Service, supra.* In the absence of prejudice to defendants, we would be reluctant to deprive the plaintiffs of an adjudication on the merits because of their attorney's actions. *Central R.R. v. Neeld, supra.* The delay subsequent to July 1976 is attributable to the attorneys on both sides, for the reasons that we have set forth. Since we would have allowed a second complaint in July 1976, we do not agree that settled New Jersey law mandates dismissal of this second complaint because of the statute of limitations.

We are more at a loss to comprehend Justice Pollock's response to the majority ruling. We in no way approve of the conduct of plaintiffs' counsel and have stated quite clearly our stern disapproval. We have also indicated disapproval of the conduct of defendants' counsel. It is argued that defendants' counsel notified plaintiffs' counsel that they considered the case closed. Justice Pollock implies that this notification constituted an adequate response to the continued adjournments of the case. We disagree. Since defendants' counsel knew that the case remained on the docket, rightly or wrongfully, they had an obligation to notify *the court* of the fact that the case had been dismissed. We find that both plaintiffs' and defendants' counsel played havoc with the rules of court. Both deliberately allowed a court of law to act under a misapprehension as to the status of the case. Certainly, it was plaintiffs' counsel who had a duty under the rules to seek a vacation of the dismissal. Yet we

---

[4]*See* discussion, *supra* p. 256.

cannot agree that defendants' counsel shares no part of the blame for the long delay.

We are further accused of seeking to reverse our holding in *Zaccardi I* because of a "belated concern" for the rights of plaintiffs to an adjudication on the merits. (at 268). We have made clear the differences between the legal issue in *Zaccardi I* and the legal issue here. Indeed, we have carefully explained that dismissal of a case does not of necessity bar a new complaint.

Further, the dissent criticizes the majority for improperly weighing the equities in this difficult situation, but in vain do we search Justice Pollock's own opinion for a balanced discussion of the relative rights of the plaintiffs and the defendants. The dissent emphasizes that our holding protects plaintiffs' counsel and causes great damage to defendants. The wrongs of defendants' counsel are minimized to the point of implying a judicial imprimatur on their failure to notify the court of its misapprehension of the status of the case. The rights of defendants are discussed at length. Yet not only are the rights of plaintiffs to an adjudication on the merits given little attention, but we are faulted for being concerned about their interests at all. While it is true that the dissent's analysis would simplify matters, it is difficult to see how it represents a "fairer" solution to the conflict before us.

Under the unique circumstances of this case, we hold that defendants are equitably estopped from asserting the statute of limitations as an affirmative defense. Since defendants' own conduct contributed to the delay, plaintiffs are entitled to assert their claims.

We reverse and remand to the trial court for further proceedings.

SCHREIBER, J., concurring and dissenting.

The key issue is whether the statute of limitations bars this suit. The malpractice occurred on March 12, 1974 and this

action was commenced about four years and eight months later on November 17, 1978. Plaintiffs assert that the two year limitation period does not bar this suit for two reasons.

First, the plaintiffs contend that the limitation period commenced sometime after March 12, 1974, the date of the injury, because the plaintiffs did not discover the cause of action until a later date. No hearing has been held to establish that starting point. However, the first suit was filed in January 1976 and, assuming "discovery" of the claim occurred then, this action, having been started two years and ten months later, would not be maintainable.

Second, plaintiff contends that the defendant is estopped from raising the statute of limitations defense. The dismissal on July 28, 1976 for failure to answer interrogatories was treated in an open ended fashion. Thereafter, the clerk listed the case for trial on at least ten occasions commencing on October 18, 1976.[1] Adjournments were sought and granted over a seventeen-month period. During this time plaintiff relied on the seeming vitality of the suit and defendants did nothing to dissuade that reliance. It apparently has been common practice among attorneys to accommodate counsel by not objecting to reinstatement of a suit when the time frames of Rule 4:23–5(a) have been exceeded. In view of all these circumstances, I would toll the running of the statute of limitations for the seventeen-month period. Even with such tolling, if the cause of action accrued on March 12, 1974, plaintiffs' suit would have been started more than two years thereafter.

Still the plaintiff should not be barred since on this record we do not know when the cause of action arose. That determina-

---

[1]The Superior Court docket file card listed the following trial dates: October 18, 1976, December 22, 1976, February 28, 1977, May 12, 1977, June 23, 1977, September 12, 1977, October 17, 1977, November 30, 1977, January 25, 1978, February 15, 1978 and March 22, 1978. There is a notation next to the last date that per Mr. Brennan, attorney for the defendant, the matter was pending in the Appellate Division.

tion would have to await a *Lopez* hearing. *Lopez v. Swyer*, 62 *N.J.* 267 (1973).

After the first suit was filed, the statute of limitations continued to run. *Ivins v. Schooley*, 18 *N.J.L.* 269 (Sup.Ct.1841). Therefore, the statute of limitations ran between January 1976, when the action was filed, and July 28, 1976, when the complaint was dismissed.[2] If the cause of action accrued on March 12, 1974 when the wrong was committed, as the majority assumes, a suit started March 12, 1976 would have been barred by the statute of limitations. Estoppel cannot be based on events that occurred subsequent to the dismissal of July 28, 1976, *after* the limitation period had expired. In the absence of any causal relationship between the conduct which is the foundation of the estoppel and the expiration of the period of limitations, the statutory period should be respected.

The majority would countenance a second action initiated on July 29, 1976 because (1) the defendant had adequate warning of the claim, (2) he was not prejudiced by institution of the second suit and (3) the first action was dismissed because of misconduct of the plaintiffs' attorney. The essential characteristic of a statute of limitations is the doctrine of repose. Justice Mountain observed in *Lopez v. Swyer, supra,* 62 *N.J.* at 274, that "statutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant." There comes a time when a party ought to be secure in his reasonable expectation that the matter has been put to rest.

Fair warning of a claim and lack of prejudice, irrespective of the passage of time, do not warrant tolling the statute. To do so would undermine the legislative goal of repose. Equitable estoppel prevents a defendant from raising the defense of the statute of limitations when these two factors, fair warning and

---

[2] The first action had been dismissed without prejudice and principles governing a collateral attack on a prior judgment are inapplicable.

no prejudice, are coupled with the defendant's misconduct, which lulls the plaintiff into believing that the statute will not be a bar. Yet, here there was no misconduct on the part of the defendant, at least until after dismissal of the first suit. Moreover, no misconduct appears on the part of the plaintiff's attorney, since he was seeking in good faith to discover an expert. The only misconduct referred to by the majority concerns representations made to the court after July 28, 1976. *Ante* at 254. Under all these circumstances, it is difficult to understand why the second action would not be barred if the cause of action had accrued on March 12, 1974.

It is clear, as the majority points out, that the order dismissing the first complaint did not contain the magic words "with prejudice" and was therefore without prejudice under *R.* 4:37–2(a).[3] The majority, however, has also promulgated a new rule dealing with the institution of a second suit after the original action was dismissed for failure to answer interrogatories. Thus, even though the statute of limitations may not have run, a plaintiff may be barred from instituting a second suit "when the second complaint was filed merely to harass the defendant, when the delay has so prejudiced the defendant that his ability to defend his case is seriously impaired, or when other substantial equitable considerations suggest dismissal." *Ante* at 253. I question whether this court has the authority to shorten the plaintiff's statutory period within which to commence his action. Moreover, even if this Court had such authority, I would adhere to the traditional methods of formulating a new rule, particularly under these circumstances when the new rule is not necessary or applied to the instant case.

---

[3]Statutes in most states permit the bringing of a new action, after the limitation period, within a specified time when there has been no adjudication on the merits. 51 *Am.Jur.*2d § 303, p. 808. New Jersey's saving statute permits a new action within one year only after a judgment for the plaintiff has been reversed, *N.J.S.A.* 2A:14–28. The statute would not be applicable where the plaintiff had not recovered a judgment.

I would reverse and remand for a hearing to determine when the cause of action accrued and then to determine whether the statute of limitations barred the second action.

POLLOCK, J., dissenting.

The primary issue on this appeal is whether plaintiffs' action for medical malpractice is barred by the relevant statute of limitations, *N.J.S.A.* 2A:14-2. That issue can be understood only in the factual context of the case. In a complaint filed on January 30, 1976 (*Zaccardi I*), Anthony Zaccardi alleged that he consulted the defendant doctors on March 17, 1974, at which time the doctors negligently recommended unnecessary treatment and failed to inform him of the possible consequences of that treatment. The complaint alleged further that Mr. Zaccardi was unable to make an informed judgment as to the need for or advisability of the treatment. As required by *R.* 1:4-8, plaintiffs' counsel signed the complaint, thereby certifying that there was "good ground" to support the allegations. Plaintiffs' counsel has since conceded that, at the time he filed the complaint in *Zaccardi I*, he did not have a medical report and did not know whether there was any basis for the action.

Plaintiffs' counsel admitted he "deliberately withheld" service of the complaint for several months while trying to determine the basis for the claim. That practice violates the spirit, as well as the letter, of *R.* 4:4-1, which provides that an action may be dismissed "[i]f a summons is not issued within 10 days after the filing of the complaint. . . ." Plaintiffs' counsel has acknowledged that he knew from the outset he was obliged to make timely service of the complaint. At oral argument, he stated he finally served the complaint because otherwise he knew he would "be in trouble for not serving it."

On April 21, 1976, defendants filed and served their answers, together with interrogatories requesting a copy of the reports of any medical experts. In May of 1976, plaintiffs' counsel obtained from a Dr. Kaplan a report in which, according to plaintiffs'

appellate division brief, "[t]here does not appear any specific allegation of act [sic] of negligence or malpractice." Plaintiffs' counsel did not provide defense counsel with a copy of Dr. Kaplan's report, but sought to find another expert. In the meantime, after repeated written demands for answers to interrogatories, defense counsel filed an ex parte motion to dismiss the complaint, and the complaint was dismissed on July 28, 1976.

By that time, the two-year period of limitations contained in *N.J.S.A.* 2A:14–2 had expired. Accepting as true the allegations of the complaint, the statute of limitations would have run in March of 1976, two years after the negligent consultation described in the complaint. Even accepting plaintiffs' later claim that it was a surgical procedure in April of 1974 that was the relevant act of malpractice, the statute would have expired in April of 1976.

Nevertheless, between July 28, 1976 and December, 1977, due apparently to a computer error, the case was listed for trial on eight occasions. On each of those eight dates, plaintiffs' counsel appeared and requested an adjournment on the grounds that discovery was not complete. Plaintiffs' counsel knew there was an outstanding order of dismissal that, under *R.* 4:23–5(a), could not be vacated after the passage of 30 days, but failed to advise the trial court because he "was happy to see the case coming up on the trial list." At oral argument, defense counsel advised us he had nothing in his records to indicate that his firm received copies of the trial notices. Further, defense counsel said he never personally consented to the adjournments and he was not aware that any other lawyer from his office consented. Indeed, defense counsel stated that he had informed plaintiffs' counsel that "[t]he case was over" and that he would not submit the defendant doctors for depositions.

Finally, in December, 1977, plaintiffs' counsel received a favorable medical report from a Dr. Howard that spoke in terms of negligence and malpractice, as well as lack of informed consent. Armed with this report, plaintiffs' counsel brought a

motion to reinstate the complaint, a motion granted reluctantly by the trial court. On appeal, however, the Appellate Division in *Zaccardi I* found that the actions of plaintiffs' counsel in circumventing the rules of court had been "deliberate and inexcusable" and, therefore, reversed the trial court and dismissed the complaint. *Zaccardi v. Becker*, 162 *N.J.Super.* 329, 333 (1978).

On October 16, 1978, plaintiffs' counsel filed a petition for certification with this Court. In the petition, counsel acknowledged that plaintiffs' claim "is probably permanently barred by the Statute of Limitations...." [1] In November, without advising this Court, plaintiffs filed the complaint in *Zaccardi II*. On December 19, 1978, this Court denied the petition for certification in *Zaccardi I*. 79 *N.J.* 464 (1978).

Thereafter the trial court, on April 29, 1979, dismissed the complaint in *Zaccardi II*, which was identical to the complaint in *Zaccardi I*. That court based its decision on the alternative grounds that *Zaccardi I* had been dismissed with prejudice or that the statute of limitations had run. The Appellate Division affirmed on October 1, 1980 on the single ground that the dismissal in *Zaccardi I* was with prejudice. The majority of this Court now concludes, however, that the dismissal was without prejudice. In my opinion, whether the dismissal in *Zaccardi I* was with or without prejudice is irrelevant because the statute of limitations bars the action in *Zaccardi II*.

The effect of the majority opinion is to deprive the defendants of the defense of the statute of limitations because the majority finds, on balance, that the equities weigh more heavily in favor of the plaintiffs. In balancing the equities, however, the majori-

---

[1]The second of two questions involved in the petition for certification in *Zaccardi I* was "Did the Appellate Division err in failing to consider that plaintiffs' meritorious claim in this case is probably permanently barred by the Statute of Limitations notwithstanding the fact that there is no evidence of any prejudice to the defendants or the real party in interest, their insurance carrier?"

ty emphasizes unduly the mere inaction of defense counsel while deemphasizing the deliberate misconduct of plaintiffs' counsel.

On one hand, the majority finds that defense counsel somehow "acquiesced" in the "inordinate delay" by plaintiffs' counsel in moving to vacate the dismissal. *Ante* at 254. It finds "acquiescence" because defense counsel had notice of the adjournments and "contributed to the delay" by failing to object, *ante* at 255, and by failing to notify the trial court that the case was dismissed. *Ante* at 257. Defense counsel, however, represented at oral argument that he had told plaintiffs' counsel he would not produce the doctors for depositions because "the case was over," that he had no record of receiving any trial notices, and that he had not consented to any adjournments.

By contrast, plaintiffs' counsel conceded at oral argument that he knew the case had been dismissed, that he deliberately failed to inform the trial court of the dismissal and that he was actively misrepresenting the status of the case by asking for adjournments. Furthermore, while he initially asserted that defense counsel had consented to the adjournments, he ended by admitting that, perhaps, counsel simply had not been present. This course of conduct, the majority agrees, is "highly improper." *Ante* at 254.

Somehow the majority transmutes this "highly improper" conduct of plaintiffs' counsel into "[e]quitable considerations" that, when balanced against the inaction of defense counsel, warrant erasure of the defense of the statute of limitations. I am unable to join in that reasoning.

My reservations are underscored, moreover, by the ready distinction of the present case from the cases upon which the majority relies. In those cases, the party equitably estopped from claiming the protection of the statute of limitations had actively contributed to the delay of the opposing party in bringing suit: *e.g., State v. United States Steel Corp.,* 22 *N.J.* 341 (1956) (defendant, which had breached its duty to report to the State the existence of unpaid wages, was equitably estopped

from pleading statute of limitations as bar to escheat action); *Friedman v. Friendly Ice Cream Co.*, 133 *N.J.Super.* 333 (App. Div.1975) (summary judgment for defendant reversed where there was question of fact whether insurer admitted liability, made settlement offer and intentionally protracted negotiations so statute of limitations could run against plaintiffs' claim). The acts of misrepresentation by defendants in those cases justified estopping them from pleading a time bar. *See Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 *N.J.* 334, 339 (1979).

Here, however, defendants did not conceal or misrepresent any material fact. Plaintiffs' counsel was well aware of the dismissal and knew defense counsel believed "the case was over." It is doubtful that defense counsel ever received the erroneous trial notices and, in any event, plaintiffs' counsel did not rely on the silence of defense counsel. This is not a case in which defendants or their counsel deceived or misled plaintiffs or their counsel. Rather, it is a case in which the majority's misperception of equitable considerations gives rise to an inequitable result.

Two years ago, knowing that the statute of limitations would probably bar a second action, this Court declined to review the dismissal of the complaint in *Zaccardi I.* In effect, the Court has now reversed itself. This result stems from a belated concern that dismissal of the complaint in *Zaccardi II* will deprive plaintiffs of their opportunity to prove medical malpractice. On the facts of this case, however, that understandable concern should yield to the underlying purposes of the statute of limitations: to induce litigants to pursue their claims diligently and to spare courts and parties from litigating stale claims. As the Court has recently written, "[O]nce memories fade, witnesses become unavailable, and evidence is lost, courts no longer possess the capacity to distinguish valid claims from those which are frivolous or vexatious." *Galligan v. Westfield Centre Service, Inc.*, 82 *N.J.* 188, 192 (1980).

Through no fault of the defendant doctors, they and their witnesses will be called upon to testify in 1982 about events that took place in 1974. The prejudicial effect of the passage of eight years on the recollection of witnesses is apparent. A belief that plaintiffs have a valid medical malpractice claim need not leave them remediless. Where "highly improper" conduct of counsel results in a time bar to an otherwise meritorious claim, plaintiffs' remedy may sound in an action for legal, not medical, malpractice. The untoward implication of the majority decision is that "deliberate and inexcusable" misconduct of a plaintiff's counsel becomes a reason for subjecting a defendant to stale claims. In the aggravated facts of this case, the further implication is that parties can no longer rely on the statute of limitations or on the decisions of this Court. Stability in judicial, as well as human, affairs should lead to affirmance of the decision of the Appellate Division.

SCHREIBER, J., concurring in part and dissenting in part.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, SCHREIBER, HANDLER and O'HERN— 5.

*For affirmance*—Justice POLLOCK—1.