NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4813-15T4

RHONDA FULLER,

    Plaintiff-Appellant,

v.

BAYER CORP, BAYER HEALTHCARE,
LLC, INTENDIS INC., BAYER AG, TEVA
PHARMACEUTICALS INDUSTRIES, LTD.,
TEVA PHARMACEUTICALS LLC f/k/a
BARR PHARMACEUTICALS INC. and BARR
LABORATORIES, INC.,

    Defendants,

and

BAYER HEALTHCARE PHARMACEUTICALS,
INC. and BAYER SCHERING PHARMA AG,

    Defendants-Respondents.

_____

Submitted November 6, 2017 — Decided June 18, 2018

Before Judges Accurso and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-3654-13.

DeHeer Bureau Advocato, attorneys for
appellant (Andrew K. DeHeer, of counsel and
on the brief).

Drinker Biddle & Reath LLP, and Kaspar J. Stoffelmayr (Bartlit Beck Herman Palenchar & Scott LLP) of the Illinois bar, admitted pro hac vice, attorneys for respondents (Susan M. Sharko, Jennifer LaMont, and Kaspar J. Stoffelmayr, on the brief).

PER CURIAM

Plaintiff Rhonda Fuller appeals from an order denying her motion for reconsideration of an order dismissing her complaint against defendants Bayer Healthcare Pharmaceuticals, Inc., and Bayer Pharma with prejudice.[1]  After reviewing the record and applicable legal principles, we affirm.

I

Defendants marketed two oral contraceptive drugs, Yaz and Yasmin.  The record informs that, in 2002, plaintiff used Yaz and Yasmin and subsequently developed gallstones, necessitating the removal of her gallbladder in 2003.  In April 2007, she was again prescribed these two drugs and, in February 2008, was diagnosed and treated for a venal thromboembolism.  In 2013, plaintiff filed a complaint against defendants alleging the use of these two drugs caused her to develop blood clots and "gall bladder disease."

---

[1]  Other defendants remain in this matter but, for simplicity, the use of the term "defendants" in this opinion refers solely to Bayer Healthcare Pharmaceuticals, Inc., and Bayer Pharma AG.

2

During the litigation numerous case management orders were entered governing all parties involved in the multicounty litigation known as the "Yaz/Yasmin/Ocella Product Liability Litigation," which included the within matter. One case management order (CMO), specifically CMO #7, required plaintiff to provide a "Plaintiff Fact Sheet" and signed authorizations to enable defendants to obtain her medical records. Plaintiff did not comply with this order and on March 15, 2015, the court entered CMO #47, which dismissed her complaint without prejudice.

On August 3, 2015, the court entered CMO #52, which compelled plaintiff to submit by December 3, 2015 an updated and complete Plaintiff Fact Sheet, as well as an expert's report on causation for each alleged injury. The expert's report had to comply with Rule 4:17-4(e). The order also provided that if plaintiff did not comply with the order, defendants were permitted to file a motion to dismiss the complaint within sixty days after the subject discovery became delinquent. If plaintiff failed to file a response to defendants' dismissal motion within fourteen days, the complaint would be dismissed with prejudice.

In November 2015, plaintiff moved to reinstate her complaint, which had been dismissed since the entry of the March

3

15, 2015 order. She did not produce a Plaintiff Fact Sheet until oral argument. The court reinstated the complaint on two conditions. One was she had to fully comply with the terms of CMO #52 by February 1, 2016. The other was that, if by December 31, 2015 defendants advised plaintiff of any deficiencies in the Plaintiff Fact Sheet, she had to cure such deficiencies by January 21, 2016.

The court's decision, memorialized in an order dated December 18, 2015, also provided plaintiff had to serve all documents upon defense counsel by email. The order expressly set forth the defense attorney's name and email address in the order.

On December 31, 2015, defendants forwarded a letter to plaintiff advising her of deficiencies they found in the Plaintiff Fact Sheet. Defendants informed plaintiff they planned to move for the dismissal of her complaint if such deficiencies were not cured by January 21, 2016. When plaintiff did not serve defendants with an expert's report by February 1, 2016, they filed a motion to dismiss the complaint. Plaintiff

4

did not oppose the motion and, on February 26, 2016, the court entered an order dismissing her complaint with prejudice.[2]

Plaintiff moved for reconsideration of the February 26, 2016 order. The court considered plaintiff's position despite the fact she had not opposed the original motion. We do not have a copy of plaintiff's motion papers but, during oral argument, she claimed she served an expert's report in accordance with CMO #52. However, she conceded she did not serve defense counsel. She explained that, at some point in the past, she sent the report to a law firm in Kansas City that represents defendants' interests and with which plaintiff previously communicated about settlement. She also stated that what she served was an x-ray report.

Plaintiff also argued that when defendants did not receive her expert's report by February 1, 2016, they were required under Rule 1:6-2(c) to contact her and advise the report was overdue. She contended defendants were precluded from filing a motion to dismiss her complaint until they complied with Rule 1:6-2(c).

---

[2] Defendants' brief contends plaintiff filed a response to their dismissal motion on March 7, 2016, after the February 26, 2016 order was entered.

5

The court pointed out the December 18, 2015 order directed her to comply with CMO #52 by February 1, 2016, which included serving her expert's report by the latter date, and under the circumstances defendants did not have an obligation to communicate with her concerning her failure to comply with either order before filing a motion for dismissal. Defendants asserted they never received an expert's report from plaintiff, and noted plaintiff did not attach a copy of the alleged report to her motion papers.

The court suspended oral argument and directed plaintiff to forward the expert's report to its chambers by facsimile. Plaintiff transmitted an undated, unsigned, five-page document that did not reveal or indicate in any way who wrote it or to whom it was addressed. The first page of what the court received is not on letterhead; in fact it is not clear the first page of what was faxed to the court is in fact the first page of the document.

The first three pages of the document cite studies and discuss some of negative side-effects of Yasmin and Yaz. The last two pages address plaintiff's medical history and set forth the author's opinions. The report states "[t]here are several factors attributing to the increased risk and likelihood of

6

[venous thromboembolism] in this Client[,]" and one of those risks is the use of these two drugs.

The report claimed the Food and Drug Administration (FDA) and other monitoring agencies "considered a previous formulation to increase the risk of venous thromboembolism by 2 to 3 compared to other drugs in the category. . . . The client has been already taking the higher dosages, which was alerted by the FDA to have an even increased [sic] for venous thromboembolism after their review."

However, the document further states that, according to the FDA, "no specific pharmacodynamic studies were conducted with Yasmin" and, although Yaz is known to activate the coagulation profile, the potency and duration of use necessary to cause such effect is unknown. In addition, the report comments there were other risk factors present in the "client" that are associated with venous thromboembolism and unrelated to the use of the subject drugs.

The report concludes, "[i]t is therefore believed that from the information in the medical [l]iterature, the drug Yasmin is quite a potent coagulation system activator . . . therefore highly contributed [to] the development of VTE in this client."

The court found plaintiff's obligations under the terms of the orders were clear, and that she failed to show why she was

7

unable to abide by them.  More important, the court found the expert's report defective in various respects, including the fact the report was silent on who wrote the report and when.[3] Therefore, the court denied plaintiff's motion for reconsideration, entering an order on May 25, 2016.

II

On appeal, plaintiff asserts the following arguments:

> POINT I: DID THE TRIAL COURT ABUSE ITS DISCRETION AND OVERREACH BY VIOLATING R. 4:37-2(a) AND R. 4:23-2(b) WHEN IT IMMEDIATELY DISMISSED THE PLAINTIFF'S CASE IN CHIEF WITH PREJUDICE FOR FAILURE TO PROVIDE DISCOVERY WHEN THE MANDATED PROCEDURE IS TO INITIALLY UTILIZE THE INTERMEDIATE STEP OF DISMISSAL WITHOUT PREJUDICE?
>
> POINT II: DOES A TRIAL COURT ABUSE ITS DISCRETION AND COMMIT REVERSIBLE ERROR WHEN IT MAKES A SUA SPONTE DETERMINATION CONCERNING THE QUALITY AND SUFFICIENCY OF AN EXPERT'S REPORT WITHOUT HOLDING A FORMAL HEARING?
>
> POINT III: DID THE TRIAL COURT ERR IN FAILING TO REQUIRE IN ITS DISCOVERY ORDER THAT COUNSEL INITIALLY "MEET AND CONFER" BEFORE PROCEEDING TO FILE MOTION PAPERS AS MANDATED BY R. 1:6-2(c)?

---

[3] Plaintiff did not advise who authored the report during oral argument.

We address the latter point first. Plaintiff contends Rule 1:6-2(c)[4] required defendants to contact her when her expert's report was not served by February 1, 2016, and to advise the report was overdue.

A trial court's decision concerning a discovery matter is reviewed under the abuse of discretion standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). Here, CMO #52 provided that, if plaintiff's expert's report was not served by the time provided in that order,[5] defendants were permitted to file a motion to dismiss the complaint with

_____

[4] Rule 1:6-2(c) states in pertinent part:

> Every motion in a civil case . . . involving any aspect of pretrial discovery . . . shall be listed for disposition only if accompanied by a certification stating that the attorney for the moving party has either (1) personally conferred orally or has made a specifically described good faith attempt to confer orally with the attorney for the opposing party in order to resolve the issues raised by the motion by agreement or consent order and that such effort at resolution has been unsuccessful, or (2) advised the attorney for the opposing party by letter, after the default has occurred, that continued non-compliance with a discovery obligation will result in an appropriate motion being made without further attempt to resolve the matter.

[5] As previously stated, the December 18, 2015 order extended the deadline by when plaintiff expert's report was due to February 1, 2016.

9

prejudice. Defendants were not additionally required to contact plaintiff pursuant to <u>Rule</u> 1:6-2(c) before filing their motion to dismiss the complaint.

Second, plaintiff did not file any opposition to defendants' motion to dismiss her complaint. Third, <u>Rule</u> 4:23-2 (b)(3) provides in relevant part:

> (b) If a party fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (3) An order . . . dismissing the action or proceeding or any part thereof with or without prejudice. . . .

When plaintiff did not submit her expert's report in compliance with CMO #52 and the December 18, 2015 order, defendants moved to dismiss the complaint. The court granted that unopposed motion and entered an order on February 26, 2016, dismissing the complaint with prejudice. The entry of the latter order was in accordance with <u>Rule</u> 4:23-2(b)(3). Defendants were not required to abide by <u>Rule</u> 1:6-2(c) before filing their dismissal motion.

We are keenly aware the dismissal of plaintiff's complaint with prejudice is the ultimate sanction, and is a remedy that

may be imposed only sparingly. <u>Zaccardi v. Becker</u>, 88 N.J. 245, 253 (1982). We perused the record to determine if a less severe sanction would suffice, but did not succeed. The critical fact here is plaintiff did not serve defendants with an expert's report that can be deemed acceptable, and the record reflects she still has not done so.

Nowhere in the report does the author's name appear, and the report is unsigned. The author's qualifications are not revealed. It is not known if the document the plaintiff labeled as her expert's report is intended to be such by its author. There is no indication when the report was drafted. The report does not even include a beginning or ending page.

An expert's report with these kinds of deficiencies cannot be tolerated. We do not suggest plaintiff's attorney engaged in any inappropriate conduct, but we cannot help but observe that the form and content of the report are such that anyone could have drafted it. It is not beyond the capability of many to extract information from the various scientific treatises cited in the report and cobble together the kind of opinions set forth therein. Providing a signed and dated expert's report revealing the author's identity at least provides a modicum of authenticity.

11

Although in her brief before us plaintiff provides the name of the purported author of her expert's report, it is not known when the author's name was divulged to defendants. Moreover, there is no indication the author has claimed the subject report as his own. The content of the report remains the same; it is devoid of any indication of who wrote the report and when it was drafted.

The deficiencies in plaintiff's expert's report are sufficient to have justified the court's decision to deny plaintiff's motion for reconsideration. We discern no abuse of discretion.

As for plaintiff's remaining arguments, we addressed the applicability of Rule 4:23-2(b); the rest are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4813-15T4