**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1340-17T3

HERB PETERMANN,
DORIS PETERMANN,
and TOM PETERMANN,

     Plaintiffs-Respondents,

v.

MARIA G. DUARTE, a/k/a
MARIA DUARTE,

     Defendant,

and

ARMANDO S. DUARTE,
a/k/a ARMANDO DUARTE,

     Defendant-Appellant.

_____

       Submitted January 8, 2019 – Decided April 8, 2019

       Before Judges Fisher and Suter.

       On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000185-16.

Armando S. Duarte, appellant pro se.

LoFaro & Reiser, LLP, attorneys for respondents (Glenn R. Reiser, on the brief).

PER CURIAM

Defendant Armando S. Duarte appeals a judgment in favor of plaintiffs Herb and Doris Petermann[1] that determined them to be the owners of two vintage automobiles. The judgment required defendant to endorse the titles of the two vehicles and tender them to Herb and Doris. Separately, Doris was required to pay $6500 to defendant through her attorney. Although defendant appeals the judgment, he endorsed the titles and accepted the $6500 payment from Doris.

The only issue raised by defendant in this appeal is his claim that the trial court erred as a matter of law by dismissing his counterclaim for replevin as untimely asserted. We agree the counterclaim was correctly dismissed, and affirm the court's order.

I

Herb and Doris knew defendant through their son, plaintiff Thomas Petermann, who had known defendant since high school. Herb owned a 1978

---

[1] We refer to the Petermanns by their first names to avoid confusion because they share the same surname. Later we refer to defendant's mother, Maria Duarte, by her first name for the same reason.

Corvette; Doris owned a 1968 Camaro. Herb and Doris individually held title to these vehicles and stored them in a garage in Pennsylvania.

In 1998, Thomas asked defendant for a loan to invest in a music artist he was promoting. Herb also was involved with the music venture. Herb and Doris agreed to pledge the two vintage automobiles as collateral to secure two loans that totaled $12,000. In March 1998, Herb and Thomas signed a $6000 note and security agreement, prepared by defendant's attorney, in which they promised to repay $6000 with interest of $500. The note did not have a maturity date; it did not list the lender; it was not signed by defendant; and it was never recorded as a lien. The 1978 Corvette was listed in the note as security for the loan.

The note provided that Herb could keep possession of the Corvette unless there was a default. In the event of default, notice of the intended disposition of the collateral was to be mailed to Herb at least ten days in advance.

Herb signed the car's title. Pursuant to the note, it was to be held in escrow by defendant's attorney. A separate escrow agreement was prepared but never completed. It had no signature page and did not list the lender. Herb never received a fully executed copy of the note or escrow agreement.

None of the parties disputed that Doris was supposed to receive a similar note, security agreement and escrow agreement where she would pledge her

3

1968 Camaro as security for a loan in the same amount with all the same terms. She testified that she signed the title to the Camaro so it could be held in escrow as security for the loan; she did not intend to sell the car. However, Doris testified she did not receive the loan documents and they were not produced during the trial.[2]

Just four days later, defendant claimed that his mother, Maria Duarte, loaned Thomas $85,000. Contrary to the formality of the first note, this note was handwritten by Thomas on a single piece of paper. Thomas was the only signatory. Maria did not sign it even though her name and address appeared on the document. Under the terms of this note, Thomas agreed to "pay back a loan of $85,000.00 cash to Maria G. Duarte in [thirty] days." The note was not recorded; Herb and Doris were not signatories.

Thomas testified that he asked defendant to borrow $8500 not $85,000. He claimed that additional zeros were added to make it appear the loan was for a larger sum. Thomas testified that when he signed the document, it had nothing

---

[2] Defendant's post-trial motion for reconsideration alleged that he discovered the original note and security agreement for the Camaro after the trial and that it was for $5000 plus interest of $500 for a total of $5500. The court denied reconsideration because these documents could have been produced earlier and by this time, defendant already had signed over the titles to Herb and Doris and received payment of $6500.

A-1340-17T3

to do with the vintage automobiles. The additional language on the agreement, "1978 Corvette 25th Silver Anniversary Pace Car" and "1968 Camaro RS+SS," was not his handwriting.

Herb and Doris never relinquished possession of the vintage automobiles. Unknown to them, however, the titles to those vehicles were not escrowed with defendant's attorney; defendant kept them. In 2000, without any notice to Herb or Doris, defendant transferred both titles to Maria, who then registered them with the Motor Vehicle Commission in her name.

For the next few years, defendant and Maria attempted to enforce the debts. In 2001, defendant unsuccessfully made a demand for possession of the automobiles in connection with Herb's Chapter Seven bankruptcy, where Herb had listed the 1978 Corvette as his property and identified defendant as a secured creditor. In 2002, defendant filed a report with the police where he alleged Herb and Doris sold the vehicles to him for $80,000 but would not give him possession. This is how Herb and Doris learned the titles were not being held in escrow but had been transferred to Maria. In 2004, the bankruptcy court dismissed a claim by Maria in Herb's bankruptcy proceeding to obtain possession of the vehicles. She claimed she had paid for them in exchange for the titles.

 A-1340-17T3

In 2006, defendant filed a verified complaint in the Chancery Division against Herb and Doris (but not Thomas) for replevin, alleging they were in default of an $85,000 debt and that defendant was the titled owner of the vehicles. That case was dismissed without prejudice in 2007 because defendant's Chapter Eleven bankruptcy filing was converted into a Chapter Seven case.[3] For the next ten years, neither defendant nor Maria made any attempts to collect on the loans.

Herb, Doris and Thomas filed the verified complaint for declaratory judgment—which is the focus of this appeal—in July 2016 and amended it in March 2017. In count one, plaintiffs sought a declaratory judgment that they owed no debt to defendant or Maria, that Herb and Doris were the owners of the two vintage automobiles and that the title transfers were null and void. Other counts of the complaint requested a judgment against defendant and Maria for conversion and for a storage lien.

Defendant filed a counterclaim for replevin of the vehicles. In it, he referenced the note between Thomas and Maria but claimed that it was Herb and Doris who had borrowed $85,000 from Maria and then secured that loan with the two vehicles. He claimed that when Herb and Doris defaulted on the loan,

---

[3] Defendant was discharged from bankruptcy under Chapter Seven in May 2010.

A-1340-17T3

"in lieu of payment, [they] turned over title of the vehicles to Maria . . . [and that she] subsequently turned the title to the vehicles over to [defendant]."

Shortly after, plaintiffs filed a motion for partial summary judgment to dismiss the replevin counterclaim and for a declaratory judgment under count one of their amended complaint. They argued that defendant did not have standing to pursue any claims on Maria's behalf and that his claims were barred by statutes of limitations. Defendant filed a cross-motion seeking an order to file an amended counterclaim for possession of the vehicles and a judgment.

Judge Robert P. Contillo found that defendant had no standing to pursue the replevin claim or any debts owed to Maria. He ruled that the six-year statute of limitations for replevin actions had expired for any claims by defendant or Maria. See N.J.S.A. 2A:14-1. Defendant's initial complaint for replevin was dismissed in 2006. Since then, defendant and Maria had not "pursued their legal rights concerning the vehicles." Regarding the loans, the court found the note from Thomas to Maria matured on April 23, 1998, thirty days after the date on the note. The contract could be enforced until April 23, 2004, but after that, any claim was barred by the six-year statute of limitations for contracts. See N.J.S.A. 2A:14-1. The court denied the relief requested by defendant's cross-motion.

The case proceeded to trial before Judge Contillo on plaintiffs' amended verified complaint. In a comprehensive oral decision, Judge Contillo ruled that Herb was the owner of the Corvette and Doris was the owner of the Camaro. By its own terms, the alleged $85,000 agreement matured in thirty days, which was April 24, 1998. More than six years had elapsed from then until defendant sought judgment on the counterclaim. The court found the claim was time-barred. He also found that this loan was Thomas' stand-alone obligation; it was not a loan to Herb and Doris and did not relate to the automobiles. Thomas had no ability to encumber their vehicles. The court found the obligation was $8500 not $85,000 because the testimony about this handwritten agreement did not "ring true." This loan lacked the formality that had been used for the smaller loans; there was no proof where the cash came from to pay the loan or where the money was deposited; and Maria testified that she did not remember loaning $85,000 to Thomas.

The court found there were two loans of $6000 between Herb, Doris and defendant. Although the $6000 note did not include a maturity date, the court concluded it was due within one year based on the $500 interest charge that was included. The parties intended to have the same note and escrow agreement for

the Camaro that they had for the Corvette although the paperwork never was done.

The court found that "no part of the money was ever paid back." At some point, defendant "took matters into his own hands and put the titles in his mother's name," even though she had nothing to do with the transactions. Defendant treated the titles as if they were his. All of this was done without notice to plaintiffs. The court found that defendant "was manipulating the title for reasons related to creditor avoidance," which is why defendant did not list the vehicles in his bankruptcy petition.

The court found that defendant did not "exercise the rights that he did have under these agreements with respect to the collateral." Although he filed a replevin action in 2006, it was dismissed when he went into bankruptcy "[a]nd he continued not to press the issue until finally [Herb and Doris] . . . affirmatively [brought] this action to have their entitlement confirmed by the [c]ourt." The court found that Herb's obligation was discharged in his bankruptcy and was time-barred. Doris' obligation similarly was time-barred and could no longer be enforced by defendant. However, the court found as a

9

matter of equity that defendant was entitled to $6500 from Doris, even though the debt was time-barred.[4]

Defendant was ordered to endorse the titles to Herb and Doris and then tender them in exchange for $6500 that Doris was to pay. The parties acknowledged the tender and exchange had occurred. Defendant's subsequent motion for reconsideration was denied.

On appeal, defendant argues that the trial court erroneously applied the statute of limitations because plaintiffs' "used it as a sword rather than as shield as it was intended." We do not agree the court erred.[5]

II

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests

---

[4] The court dismissed Herb and Doris's claim against defendant for storage charges because they could have stopped these charges at any point by paying the loans.

[5] Plaintiffs did not appeal the dismissal of their storage claim nor the court's order for Doris to pay $6500 to defendant.

A-1340-17T3

of justice." Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). Our review of a trial court's legal determinations is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendant's appeal is focused on whether the statute of limitations should have been applied to dismiss his replevin counterclaim and to enter judgment for plaintiffs on their claim that they owned the vehicles. These are legal determinations that we review de novo.

There really is no question that the six-year statute of limitations for replevin and contract actions has expired. See N.J.S.A. 2A:14-1 (providing that "[e]very action of law . . . for replevin of goods or chattels . . . or for recovery upon a contractual claim or liability . . . shall be commenced within [six] years next after the cause of any such action shall have accrued"). We agree with the trial court that the stand-alone contract signed by Thomas was due in thirty days according to the agreement itself. Defendant's last attempt to enforce this was in 2006 when his first replevin action was dismissed in connection with his bankruptcy. Defendant filed the replevin counterclaim again in 2017. Because more than six years expired, this counterclaim was barred by N.J.S.A. 2A:14-1.

A-1340-17T3

Similarly, Herb and Doris' obligations to repay defendant on the $6500 loans were no longer enforceable because of the same statute of limitations. See N.J.S.A. 2A:14-1. There had been no attempt by defendant or Maria to collect on these loans within the last ten years.

Defendant argues that a statute of limitations should not be used as "sword," to cut off his ability to enforce these debts. We do not agree with that proposition as a general matter.

"A statute of limitations has two purposes." Ochs v. Federal Ins. Co., 90 N.J. 108, 112 (1982). It "stimulate[s] litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend," and in doing so prevents "the litigation of stale claims." Ibid. It also "'penalize[s] dilatoriness and serve[s] as a measure of repose.'" Ibid. (quoting Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1975)).

Both reasons apply in this case. Defendant was well aware of his claims and did not timely pursue them in the last ten years. Plaintiffs' amended complaint sought to prevent the litigation of stale claims that defendant had not pursued.

The cases cited by defendant do not persuade us to the contrary. In White v. Karlsson, defendant raised the statute of limitations defense a week before

trial. 354 N.J. Super. 284, 286 (App. Div. 2002). We found that as a result of defendant's "inaction both parties expended substantial time, energy, and money preparing for trial." Id. at 290. We reversed the trial court's dismissal and remanded for a trial on the merits, holding that the "equities clearly weigh[ed] in plaintiffs' favor." Id. at 292. In Williams v. Bell Tel. Labs. Inc., the Court declined to extend the defense where a defendant raised the defense in its answer but then failed to mention it at any stage in the three-and-one-half-year proceedings until after the jury returned a verdict. 132 N.J. 109, 119-20 (1993). In Zaccardi v. Becker, the Court declined to extend the defense to a defendant whose conduct over seventeen months was inconsistent with its position that the action was barred and led plaintiffs to reasonably believe the defendant did not object to the continuation of the case. 88 N.J. 245, 257-58 (1982).

In contrast, plaintiffs did not wait until late in the litigation to raise the statute of limitations defense. They moved for summary judgment to dispose of the counterclaim for replevin approximately three months after defendant filed. There is no evidence either side expended a considerable amount of time and resources litigating the case during those three months.

Defendant does not cite to any evidence that plaintiffs intentionally induced or tricked him into missing the statute of limitations. The cases cited

by defendant are inapposite. There was no indication that plaintiffs intentionally extended settlement negotiations so as to have the statute of limitations expire as in Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333, 337 (App. Div. 1975). This case did not involve any attempt to disclaim insurance coverage as in Griggs v. Bertram, 88 N.J. 347, 362 (1982), which was not a statute of limitations case but an estoppel case. In Harr v. Allstate Ins. Co., 54 N.J. 287, 300 (1969), an insurer was estopped from asserting a limitation defense in part because it concealed that plaintiff was suing under the wrong policy. Those facts have nothing to do with the present case; there was no allegation that plaintiffs concealed anything from defendant or Maria.

Defendant claims plaintiffs' inaction induced him into missing the statute of limitations. However, he was aware of his rights to recover the vehicles; he unsuccessfully attempted to assert his claims to the vehicles on different occasions while the statute was running. Then, he slept on his rights until after the statute of limitations had run. There was no evidence that defendant was induced to inaction by any conduct or omission of plaintiffs.

We affirm the court's October 3, 2017 judgment based on the thorough and well-reasoned analysis of Judge Contillo.[6]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] We comment briefly on the issue of standing. Defendant has not challenged the court's finding that he lacked standing to enforce Maria's rights under the contract that she allegedly had with Thomas. This alone would support dismissal of the counterclaim which was based entirely on this alleged $85,000 loan. See N.J. Dept. of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) (providing that "[a]n issue that is not briefed is deemed waived upon appeal"). Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div. 2001) (providing that we will not "consider matters not properly raised below" unless the issue is of "sufficient public concern"). The issues in this case do not implicate significant public concerns. At some point, defendant transferred the titles from Maria to himself. We reach no conclusion whether this affected his lack of standing.

A-1340-17T3