FISHER, P.J.A.D.
*952 *13 In Division of Child Protection and Permanency v. E.D.-O., 223 N.J. 166, 194, 121 A.3d 832 (2015), the Court found "troubling" the disposition of a child-abuse administrative proceeding that took nearly three years:
No one-parents, caretakers, or the public-is served when an issue as important as whether an adult abused or neglected a child remains unresolved for years.
The proceedings here were glacial in comparison. Consequently, we uphold an administrative law judge's dismissal which was based on the Department of Children and Families' failure to provide complete discovery over a course of years-a circumstance that delayed until August 2015 the start of a fact-finding hearing about events that occurred more than six years earlier.
I
A
R.W. (Richard) and his younger half-sister, F.T. (Fiona), resided in the resource home of appellant K.L. (Karen) and her husband.[1] On April 23, 2009, the Department of Children and Families received a referral from his school that Richard-then eight years old-had marks on his face resembling a handprint as well as a cut on his bottom lip. Fiona disclosed that Karen, whom both children referred to as "mom" or "mommy," had grabbed Richard and slapped his face. After an investigation, the Department advised Karen and her husband on July 13, 2009, that their resource home license had been revoked.
Karen timely sought a hearing but the Department "closed" the proceeding due to an ongoing criminal matter lodged against Karen about the alleged abuse. That criminal complaint was dismissed on July 29, 2010, and the administrative proceeding was reopened in September 2010.
*14 B
The matters[2] were transferred to the Office of Administrative Law, and an administrative *954 law judge scheduled a fact-finding hearing for March 18, 2011. When the Department failed to provide discovery, the matter was adjourned to October 26, 2011; it was later adjourned to May 23-24, 2012, for the same reason.[3]
Soon after retention of current counsel, Karen moved for an order compelling discovery. The ALJ promptly ordered, on September 15, 2011, that the Department release its complete investigation file to Karen's attorney.
When the Department failed to comply, Karen moved in January 2012 for dismissal, asserting that years of the Department's foot-dragging has severely prejudiced her. A deputy attorney general responded that, among other things,[4] the materials sought had been forwarded that same day by separate letter. With that representation, the ALJ denied Karen's motion without prejudice.
The following month, Karen again moved to dismiss because the Department provided in February only some of the discovery sought. Counsel emphasized that a turnover of the Department's entire file was crucial because that file documented Richard's "diagnosis and ongoing behavioral issues of gagging or choking," a circumstance suggestive of a cause for Karen's handling the child in a way the Department viewed as abusive.
*15 The ALJ conducted a telephone conference and, on April 17, 2012, issued a written decision. The ALJ recounted the deputy attorney general's excuses for the failure to comply, i.e., that the deputy had not received "complete discovery from [the Department] because [the Department] refused to turn anything ... over unless there [was] an in camera review and redaction of any material deemed confidential." The judge also observed that Karen and her husband had "rigorously" pursued discovery from day one and "[m]ore than sufficient time has been allowed for the [Department's] production of reports and other documents." The ALJ pronounced it "time for the [Department] to fulfill [its] discovery obligations or face sanctions, which may include dismissal." She directed the deputy attorney general to obtain the materials from the Department by April 20, 2012, and forward them to the OAL for assignment of another ALJ to conduct an in camera review.
Two weeks later, Karen's attorney wrote to the ALJ to advise that the Department continued to stonewall the process. She asserted that nothing was turned over either to her or to the OAL assignment judge for in camera review. The deputy attorney general responded, claiming that "ten volumes" of materials had been turned over by the Department to her and that her own busy schedule and health problems had inhibited review of the materials prior to turnover. Karen's attorney responded a week later, reminding the ALJ that the motion to dismiss remained pending, that the Department or its attorney had in the past and continued to delay *955 the proceedings and the turnover of discovery, and that the time had come for dismissal:
Time is ticking away. It is increasingly difficult to explain to my client why the State is permitted to disregard the [c]ourt orders. We are no further than when we filed our motion in March, despite a series of phone conferences and [c]ourt [o]rders. The procedural implications of the State's lack of compliance undoubtedly prejudices my client.
The State has made many references to its lack of resources. The State's resources are much greater than mine. Once we receive the discovery, my client and I must sit together to go over all the materials .... I also have a court schedule and other clients to attend to each day. After 7 months after selecting the trial date, and 5 months after the discovery deadline, defense will have less than 10 business days to *16 prepare. This case is not a priority to [the Department]. Justice is not achieved in continuing the matter.
Concluding that "justice" could not in this manner be achieved, Karen's attorney again urged dismissal with prejudice.
The ALJ filed a written decision a few days later, memorializing that, as of May 11, 2012, the Department had failed to turn over documents for an in camera review. The judge recognized that Karen had been seeking the completion of discovery since "as early as February 2010," that the hearing had to be rescheduled twice as a result, and that the information sought but withheld was critically important to the defense. The ALJ, however, held that the Department's "obligation ... to protect children from abuse or potential abuse" suggested that she tread lightly. She denied Karen's motion but offered, through her emphatic use of upper case letters and bold print, the Department
ONE LAST CHANCE to comply with discovery orders. Accordingly, within sixty days, [the Department's attorney] is ORDERED to present to [Karen's attorney] all discovery deemed non-privileged ... and present a privilege log with a list of all documents alleged to be protected [with] a copy of each document to the OAL for in camera review.... If the privilege log and document copies are not provided to the OAL reviewing judge within sixty days from the date of this order, NO FURTHER EXTENSIONS shall be granted to provide discovery, and the matters shall be DISMISSED WITH PREJUDICE.
When sixty days passed, Karen's attorney wrote to the ALJ to advise she "received nothing from [the Department]"; she again urged dismissal. The same day, July 17, 2012, a deputy attorney general wrote to the ALJ to seek-in the absence of the deputy attorney general previously involved-a delay in the consideration of Karen's application; the writer asserted without explanation or support that the Department was "in substantial compliance" with the "One Last Chance" order. Karen's attorney immediately responded that this deputy attorney general had "grossly misrepresent[ed]" the facts. Consistent with her earlier order, the ALJ dismissed the matter with prejudice on July 26, 2012.
C
The Department filed exceptions. Five months later-on December 4, 2012-the Department's acting assistant commissioner *17 rendered an opinion which reversed the ALJ's decision and remanded to the ALJ for a hearing on the merits. Purporting to "share the ALJ's concern" about the failure to provide discovery as ordered, the acting assistant commissioner determined *956 that non-compliance "was neither deliberate, nor malicious, but occurred due to [the deputy attorney general's] overwhelming workload and the voluminous documents she had to review ... to determine whether they were privileged or appropriately discoverable."[5] Consequently, the ALJ's order was overturned and the matter remanded.[6]
With the remand, the parties picked up where they left off. Some discovery problems persisted and caused additional delay. On November 20, 2014-nearly a year after the Department's remand-the ALJ memorialized the status of discovery. The judge observed that counsel met in July 2014, that documents were reviewed, that some documents were "deemed 'not relevant' and not releasable," but
none of the agreed-upon documents [for turnover] were provided to [Karen's] counsel and, as of this date four months later, remain to be provided, notwithstanding *18 prior representations from the state that discovery was complete and that documents were available for release.
[Emphasis added.]
In an understatement, the ALJ described the case as "an old matter"; she declared that "continued delay in providing discovery" would not be "tolerated." The ALJ ordered a turnover of those documents the Department agreed to provide, as well as a turnover of "an itemized list" of those things the Department deemed "not releasable," within ten days. The order also directed that the hearing would take place on May 11, 15 and 18, 2015.
An in camera review followed, additional documents were exchanged, and the hearing finally started on August 13, 2015, more than six years after Richard was allegedly abused. The ALJ also heard testimony the next day, as well as on December 11, 2015, and January 14, 2016. After the filing of written summations, the record was deemed closed and, following two extensions,[7] the ALJ rendered her written decision on October 6, 2016, more than seven years after the alleged abuse. The judge denied Karen's motion to dismiss and found by a preponderance of the evidence that the Department proved abuse and a need for revocation of Karen's resource-home license.
D
The Department upheld the ALJ's determination that Richard was abused by *957 way of a written decision filed on November 21, 2016, a few days before Richard's sixteenth birthday. On December 1, 2016, the Department upheld the ALJ's decision to revoke Karen's license.
Karen appeals, arguing:
I. [SHE] WAS UNDULY PREJUDICED BY [THE DEPARTMENT'S] FAILURE TO COMPLETE DISCOVERY, FOR PURPOSEFUL DESTRUCTION OF INVESTIGATORY NOTES, AND FOR THE SUBSTANTIAL DELAY IN THE HEARING CAUSED BY [ITS] FAILURE TO PRODUCE DISCOVERY.
*19 II. THE [DEPARTMENT'S] DECISION MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ABUSE AND NEGLECT AS TO [RICHARD].
III. MITIGATING FACTORS WERE NOT APPLIED AS REQUIRED BY THE REVISED REGULATIONS FOR THE PURPOSES OF DETERMINING THE ADMINISTRATIVE FINDING.
IV. THE ADMINISTRATION OF JUSTICE WAS DENIED WHEN THE STATE AGENCY WHO IS A PARTY TO THE ACTION REVERSED THE ALJ'S DISMISSAL WITH PREJUDICE FOR THE STATE AGENCY'S FAILURE TO COMPLETE DISCOVERY.
Because we agree in principal with Karen's Point I and find the Department arbitrarily, capriciously and unreasonably set aside the ALJ's July 26, 2012 dismissal order, and because evidence was concededly lost due to the extraordinary passage of time that elapsed between the alleged abuse and the fact-finding hearing, we reverse without reaching Karen's other arguments.
II
A
The rules applicable to administrative proceedings permit the imposition of sanctions, including dismissal or suppression, for a failure to provide discovery. N.J.A.C. 1:1-10.5 ; N.J.A.C. 1:1-14.14(a). The approach in administrative matters is no different than that taken in our courts. See In re Uniform Administrative Procedure Rules, 90 N.J. 85, 106, 447 A.2d 151 (1982) ; see also N.J.A.C. 1:1-1.3(a) (directing that "[i]n the absence of a rule, a[n] [administrative law] judge may proceed in accordance with the New Jersey Court Rules, provided the rules are compatible with these purposes").
The need for discovery rules with teeth is obvious. Discovery rules "further the public policies of expeditious handling of cases [and] avoiding stale evidence," Zaccardi v. Becker, 88 N.J. 245, 252, 440 A.2d 1329 (1982), "eliminate, as far as possible, concealment and surprise ... to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel,"
*20 Oliviero v. Porter Hayden Co., 241 N.J. Super. 381, 387, 575 A.2d 50 (App. Div. 1990), and instill and ensure public confidence in the outcome of litigated matters by "providing uniformity, predictability and security in the conduct of litigation," Zaccardi, 88 N.J. at 252, 440 A.2d 1329. If discovery rules and enforcing orders are to have "any meaningful effect ... they must be adhered to" absent good cause. Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512, 655 A.2d 1368 (1995) (quoting Cunningham v. Rummel, 223 N.J. Super. 15, 18-19, 537 A.2d 1314 (App. Div. 1988) ).
The imposition of sanctions for the breach of a discovery order is reviewed for an abuse of discretion. Id. at 513, 655 A.2d 1368 ; see also *958 Allegro v. Afton Vill. Corp., 9 N.J. 156, 161, 87 A.2d 430 (1952) (recognizing "[i]t is particularly within the sound discretion of the trial court" to determine the sanction imposed for a discovery breach). When considering the ultimate sanction of dismissal, the judge must weigh the delinquent party's right to an adjudication on the merits with the other party's right to expect compliance with the discovery rules and orders. Zaccardi, 88 N.J. at 252, 440 A.2d 1329. The judge should "only sparingly" impose the ultimate sanction, id. at 253, 440 A.2d 1329, which is to be reserved for "those cases where the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious," Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339, 78 A.2d 705 (1951) (citations omitted); see also Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115-16, 881 A.2d 719 (2005) ; Abtrax, 139 N.J. at 514, 655 A.2d 1368.[8]
B
That the ALJ exhibited great patience with the Department's delays cannot be disputed. We have already delineated the ALJ's many efforts to secure the Department's timely compliance. Indeed, *21 when the Department's failures seemed to have pushed the matter to the brink, the judge showed great restraint and provided, in her words, "ONE LAST CHANCE," as well as a more than generous additional sixty days to do that which should have occurred years before. Even then the Department failed. That failure may have been brief, as the Department observed when reversing the ALJ's determination. But the Department had long been dilatory, causing adjournments of the hearing dates when well aware of Karen's keen interest in-indeed, right to-a rapid resolution of the claims asserted against her. The record is replete with evidence that the ALJ continually provided the Department with opportunities to fulfill its obligations. Even when a dismissal with prejudice was fully justified and, in our view, appropriate, the ALJ offered the Department one final opportunity and a generous sixty more days; the Department, however, helped itself to sixty-one. It strikes us as extraordinary-or, in the words of the cases cited above, "contumacious"-for the Department and its representatives, knowing full well that the ALJ's great patience had been exhausted, to fail to meet the "ONE LAST" deadline imposed even if only by one day.
To be sure, the interests that the Department sought to vindicate are important. But those interests do not give the Department license to choose if and when to comply with its discovery obligations and orders for discovery, nor do they allow the Department free rein to delay adjudication of such matters to the point of absurdity. As expressed in E.D.-O., the important obligation of protecting children is disserved by such delays. 223 N.J. at 194, 121 A.3d 832.
C
We recognize that in light of the administrative process we are not directly reviewing the ALJ's 2012 decision to dismiss. Instead, we are reviewing the Department's reversal of the ALJ's dismissal. Consequently, we must ask whether the Department acted arbitrarily, capriciously or unreasonably-the appellate standard *22 of review in administrative proceedings, *959 Brady v. Bd. of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997) -in finding that the ALJ abused her sound discretion in dismissing with prejudice due to the Department's discovery shortcomings. We do not hesitate in answering yes. We set out above how the ALJ patiently endured and attempted to cajole the Department into complying before providing one last opportunity, which provided more than a reasonable chance for the Department to avoid dismissal. There is no doubt that the experienced ALJ acted well within the discretion required by law. In reviewing that determination, the Department focused on the failure by one day to comply with that last chance, in concluding the sanction of dismissal was precipitous. In our view, the Department's conclusion failed to take sufficient stock of the many other, earlier failings, and fixated only on the "technological failure and human error" that occurred during the final days of the ALJ's generous "one last chance."
We find this determination to be arbitrary and capricious because it erroneously conflates the conscious choices made by the delinquent party (the Department itself) or its counsel with "human error." That is, the Department excuses the failures by referring to the deputy attorney general's "overwhelming workload" which competed with the deputy's task of reviewing "voluminous" records. As to the so-called "human error," we know only that the deputy at times in her opposing papers referred to other court appearances she was required to attend. This suggests, however, only that the Department consciously made choices that held Karen's rights hostage. That is, we may assume the deputy was not the only attorney then employed by the Attorney General's Office. If that office chose to saddle this deputy with an "overwhelming workload" it unfortunately must accept the consequences when the deputy was unable to comply with the ALJ's fair and reasonable orders.
The Department also found that the deputy was required to review "ten volumes" of material-which the Department viewed as "no small task"-without providing any information as to the *23 actual size or length of these "volumes" or why, despite the size, examination of the materials could not be completed within the years that elapsed since Karen's initial discovery demand. Moreover, the "one last chance" order didn't require a decision by the deputy as to whether to turn over or withhold particular documents to Karen, only whether documents should either be turned over or subjected to in camera review.
The only proper conclusion to reach is that the Department's decision to overturn the ALJ's order was based solely on its view that the deputy was too busy to timely comply. That premise is faulty. The Department was represented in this matter by the Attorney General's Office, not a sole practitioner. That office chose to leave this matter-as it reached the precipice of dismissal-in the hands of a deputy with an "overwhelming calendar." The Department's conclusion that the deputy did not "deliberate[ly]" fail to comply is unsound when considering that the Attorney General had considerable resources to alleviate the deputy's problems. This is the very point made by Karen's counsel in continually urging relief: "The State has made many references to its lack of resources [but its] resources are much greater than mine." We agree and conclude that when the Department excused its own failure to provide discovery by throwing the deputy under the bus and then viewed the ALJ as unreasonable for not forgiving yet another failure, it missed the critical fact that the Attorney General had greater resources to avoid this calamity and simply chose to *960 withhold those resources. That, in our view, constitutes the type of "deliberate" and "contumacious" conduct justifying dismissal,[9] and the Department's failure to recognize this in overturning the ALJ's discretionary rulings, was arbitrary, capricious and unreasonable. *24 We are also mindful that the Department's delays proved to have a significant impact on the trial that eventually commenced in the late summer of 2015.[10] In sustaining the Department's claim that Richard was abused by Karen-a finding that also was the basis for the license revocation-the ALJ found "particularly credible" the testimony of the individual who investigated the matter in 2009. Yet the transcript reveals the limitations placed on Karen's ability to challenge the investigator's credibility caused by the considerable delays in this matter. Cross-examination revealed that the practice internally was for investigators and their regional supervisors to conference their cases and that investigators were thereafter guided by notes made at that time from these discussions. The investigator, however, could not say whether those "recordings" ended up in the Department's file. On asking for these notes at trial, the investigator noted the passage of "six years" and told Karen's attorney, "they [would] have been shredded a long time ago" because "we're not able to maintain them." The investigator could not say exactly when those notes were destroyed and no record was kept of when notes were destroyed.
To be sure, no one can say what impact these notes might have had on the proceedings. That's the point. If they were available, we could assess their significance; because they aren't, we can only guess. The fault for that, however, lies with the Department's delays, yet another reason for finding a greater prejudice to Karen than just the mere passage of time before adjudication of these disputes. Allegations of child abuse and neglect require "careful, individual scrutiny." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33, 11 A.3d 844 (2011). That which inhibits that careful scrutiny should not be so cavalierly disregarded.
*25 III
For these reasons, we conclude that the Department acted arbitrarily, capriciously and unreasonably in determining that the ALJ abused her discretion in dismissing these matters in 2012. We also reach the same result when considering the denial of the same relief at the conclusion of the trial that occurred more than four years later. Karen renewed her motion to dismiss and, in light of the investigator's testimony, was able to show that even greater prejudice resulted from the Department's delays.
Reversed and remanded with directions that the Department remove Karen's name *961 from the Central Registry and to take all other appropriate steps to restore Karen's status with the Department as it previously existed in conformity with this opinion. We do not retain jurisdiction.

All names are fictional.

The proceeding concerned both the substantiation of abuse and the revocation of Karen's resource-home license.

When her attorney moved away from New Jersey, Karen retained new counsel in June 2011. That attorney died soon thereafter, and current counsel was retained in August 2011. These circumstances, however, caused no delay, as the Department's overarching failure to provide discovery was clearly responsible for all the adjournments of the hearing.

The deputy attorney general claimed the delay was caused in part by her crushing trial and appellate schedule.

The deputy attorney general filed a certification to explain the delays, citing a litany of errors, including: (1) her "erroneous[ ] calculat[ion]" of when the ALJ's sixty-day "one last chance" order would terminate; (2) while reviewing the documents, the deputy made "separate piles" in what she thought was an empty office, only to have this process upset when the office's occupant returned and reclaimed the area; (3) the deputy left for a trip to Las Vegas as the sixty days expired, and the task of physically turning over the documents was left to an intern; (4) on arriving out west, the deputy was unable to determine whether the turnover timely occurred because of troubles "access[ing] the network" made more difficult by her being in a different time zone; and (5) the deputy's intern, whom she left to complete the process, "misunderst[ood]" instructions and failed to reach out for her when problems arose.

The deputy wasn't alone in failing to meet deadlines. The acting assistant commissioner's written decision was delayed and communications about extensions confused. The written opinion noted that the forty-five-day period for its decision expired on September 9, 2012, but an extension order, which was entered on August 15, 2012, was not served on the parties until two months later!

Such decisions must be rendered within forty-five days. N.J.S.A. 52:14B-10(c). That time limit may be extended for good cause. N.J.A.C. 1:1-18.8(a).

The need to deter other delinquent parties is also a relevant consideration. Abtrax, 139 N.J. at 515, 655 A.2d 1368.

We would also note that the Department, in reversing the dismissal, viewed the standard as requiring a "deliberate" and "malicious" failure. Our courts have never required proof of malice to justify the imposition of the ultimate sanction of dismissal. The Department's reliance on an incorrect legal standard further renders its decision arbitrary, capricious and unreasonable.

It is incredible to think possible with this "past as prologue," that discovery remained incomplete even when the matter was tried between August 2015 and January 2016. In her October 6, 2016 decision, the ALJ noted that "[c]ontrary to the numerous representations [of the Department] to this forum and elsewhere that discovery was complete or nearly complete, that was never the case." The ALJ observed that even during the hearing, "documents were introduced [by the Department] that had not previously been provided" to Karen.