# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2686-19

K.P.,

    Respondent-Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES,

    Petitioner-Respondent.

_____

Submitted March 1, 2021 – Decided April 12, 2021

Before Judges Messano and Hoffman.

On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Agency Docket No. AHU 09-1211.

Williams Law Group, LLC, attorneys for appellant (Allison Williams, of counsel and on the briefs; Victoria D. Miranda, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

PER CURIAM

Following a hearing before an administrative law judge (ALJ), the Assistant Commissioner of the Division of Child Protection and Permanency (the Division) adopted the ALJ's findings and conclusion and issued a final agency decision affirming the substantiated finding of neglect against K.P. (Kevin).[1] Kevin appeals, arguing the final decision was arbitrary, capricious or unreasonable because the evidence was insufficient to establish that he neglected his children. Kevin also argues the ALJ erroneously admitted hearsay evidence, as well as evidence of "subsequent remedial measures," that affected the Division's decision and requires reversal. We have considered these arguments and affirm.

I.

The testimony and evidence as detailed in the ALJ's comprehensive written decision revealed that on Memorial Day, May 25, 2009, shortly after 8:00 p.m., Sea Girt police sergeant Kevin Davenport was on patrol when he observed a classic car[2] stopped at an intersection stop sign "in the middle lane of traffic." Kevin was driving, with his five-year-old son on his lap and his

---

[1] We use initials pursuant to Rule 1:38-3(d)(12).

[2] The car was a 1966 Austin Healey convertible.

seven-year-old son in the rear seat. As Davenport attempted to draw alongside the car, Kevin drove through the intersection a short distance before turning into the driveway of his home. Davenport followed.

Kevin and the children exited the car. Davenport said Kevin "immediately had to lean . . . on the . . . door for support[,]" and, when asked for his credentials, Kevin slurred in response that his license was in the house. Kevin's wife brought it outside to him, and he gave it to the sergeant. Kevin acknowledged having taken "his kids for a joy ride." After the children left with Kevin's wife and went into the home, Davenport, who detected an odor of alcohol on Kevin's breath, asked him to perform field sobriety tests in the garage. Ultimately, Davenport determined Kevin was under the influence of alcohol and arrested him for driving while impaired (DWI).[3] In response to questions posed on the "Drunk Driving Questionnaire" that Davenport completed, Kevin claimed he drank two "Bacardi and [D]iet [C]okes" between 7:30 and 8:00 p.m.

---

[3] Police administered an Alcotest to Kevin. However, the results and Kevin's conviction were the subject of appellate litigation that ultimately resulted in suppression of Kevin's and thousands of other defendants' BAC readings. At the municipal court hearing, the parties stipulated that Sergeant Davenport had sufficient probable cause to stop Kevin for DWI, but without the BAC test results, Davenport could not be confident beyond a reasonable doubt that Kevin was under the influence of alcohol.

A-2686-19

Davenport reported the arrest to the Department of Children and Families (DCF), and Division caseworker Lavaughn Cox-Allison responded to Kevin's home to investigate. Kevin's wife was not in the home when he left with his sons in the car, and she was unaware he had been drinking. Cox-Allison spoke with Kevin. He admitted having two glasses of rum and Diet Coke "[ten] minutes prior to leaving the home" and driving with his sons.

In addition, before the ALJ, the Division produced Sea Girt Patrolman Brian Joule and Division supervisor Catherine Pertesis as witnesses. We discuss their testimony, the subject of Kevin's specific objections, in greater detail below.

Kevin also testified, reiterating that he had only two drinks before he yielded to his son, who begged him for a ride in the new car. While he was driving, his younger son took off his seat belt and jumped onto his lap. Kevin said he only drove a short distance, about "two-tenths of a mile." Regarding the field sobriety tests, the ALJ noted that Kevin "did not disagree with Sergeant Davenport's assessments[,]" but explained that he struggled because he had a "really, really bad back" that would "seize up a lot."

The ALJ found that Kevin was under the influence of alcohol when he drove with the children in his car. She credited Davenport's observations of

4

Kevin at the scene. The ALJ found Kevin credibly testified that the drive was short, "around the block," and he was "driving 'really, really slow.'" She believed Kevin's testimony that his sons were initially buckled in their seats using lap belts, but his youngest son unbuckled his and sat on Kevin's lap. However, the ALJ noted that Kevin acknowledged the two children should have been in child car seats, but he thought they would not fit in the car, and that he did not want to stop the car so close to his home and "in the middle of the street" to re-buckle his son in his seat. She found that Kevin was remorseful.

Citing appropriate provisions of Title Nine, and both published and unpublished decisions of our court, the ALJ concluded DCF "appropriately substantiated neglect[,]" because Kevin violated "N.J.S.A. 9:6-8.21(c)(4) by driving under the influence of alcohol with the children in the car[.]" The Assistant Commissioner's final decision adopted the ALJ's initial decision and found Kevin: 1) "failed to exercise a minimum degree of care by driving under the influence . . . with his children in a car without proper car restraints"; 2) "failed a field sobriety test and displayed visual signs that he was impaired"; and 3) "placed his children at a substantial risk of harm[.]"

On appeal, we apply a limited standard of review to the Division's final decision, namely, whether that determination was arbitrary, capricious or

unreasonable.  N.J. Dep't of Child. & Fams. v. E.L., 454 N.J. Super. 10, 21–22 (App. Div. 2018) (citing Brady v. Bd. of Review, 152 N.J. 197, 210 (1997)). "[A]n appellant carries a substantial burden of persuasion, and the agency's determination carries a presumption of reasonableness."  Dep't of Child. & Fams. v. C.H., 414 N.J. Super. 472, 479–80 (App. Div. 2010) (citing Gloucester Cnty. Welfare Bd. v. State Civil Serv. Comm'n, 93 N.J. 384, 390–91 (1983)).

"Reviewing courts should give considerable weight to any agency's interpretation of a statute the agency is charged with enforcing."  Id. at 480. (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 170 (1999)).  "We do not, however, simply 'rubber stamp the agency's decision.'"  N.J. Dep't of Child. & Fams. v. S.P., 402 N.J. Super. 255, 268 (App. Div. 2008) (quoting Paff v. N.J. Dep't of Lab., 392 N.J. Super. 334, 340 (App. Div. 2007)).

Kevin contends, in essence, that the Division's decision was not supported by "credible, competent evidence, and therefore was arbitrary, capricious and unreasonable."  He asserts there was insufficient evidence to demonstrate he failed to exercise the necessary minimum degree of care for the children.  We disagree.

An abused or neglected child is one under eighteen years of age

> whose physical, mental, or emotional condition has
> been impaired or is in imminent danger of becoming

A-2686-19

impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . or by any other acts of a similarly serious nature requiring the aid of the court[.]

[N.J.S.A. 9:6-8.21(c)(4).]

As used in the statute, a minimum degree of care is "conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S., 157 N.J. at 178. "To be sure, '[w]hether a particular event is to be classified as merely negligent or grossly negligent defies "mathematical precision."'" Dep't of Child. & Fams., v. E.D.-O., 223 N.J. 166, 185 (2015) (alteration in original) (quoting Div. of Youth & Fam. Servs. v. A.R., 419 N.J. Super. 538, 544 (App. Div. 2011)).

We have no hesitancy in concluding, as we have repeatedly done in the past, that permitting a child to ride in a motor vehicle with an inebriated driver is grossly negligent. See, e.g., N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 352–53 (App. Div. 2016) ("[I]t is reasonable, and far from imaginary, to envision the harm that may well have befallen [a child passenger] and others had [the intoxicated defendant-parent] driven his vehicle upon leaving the bar."); N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 69 (App. Div. 2014) (affirming substantiation of child neglect and observing

"that no reasonable person could fail to appreciate the danger of permitting children to ride in a motor vehicle driven by an inebriated operator").

The Commissioner's decision, which accepted and adopted the ALJ's credibility determinations and factual findings, was amply supported by the substantial credible evidence in the record. To the extent Kevin challenges this in a separate point in his brief, the argument requires no further discussion in a written opinion. R. 2:11-3(e)(1)(E). The Division established by a preponderance of credible evidence that Kevin neglected his children pursuant to N.J.S.A. 9:6-8.21(c)(4).

## II.

We address the two evidentiary issues Kevin raises, convinced that neither one requires reversal.

Patrolman Joule testified that while on patrol on the day in question, an older couple that was walking "flagged [him] down." When the officer began to testify as to what the couple said, Kevin's counsel objected on hearsay grounds. The ALJ overruled the objection, stating: "I make no comment on any weight I will give it and whether it will comply with the residuum rule if I intend to use it as a determination on its own."

Joule testified that the couple "reported a . . . classic vehicle operating with a child on the lap of the driver and driving erratically." Joule broadcast that description over the radio and, a short time later, Sergeant Davenport reported he had located the car. Joule responded to the location and provided back up for the sergeant. On cross-examination, Joule acknowledged that he never saw the car "in motion" and never witnessed any motor vehicle violations.

Kevin argues Joule's testimony recounting the elderly couple's statements was inadmissible hearsay. Prior to the hearing, Kevin's counsel lodged certain objections to documents the Division intended to proffer at the hearing. One such document was Davenport's police report, which counsel noted included embedded hearsay, i.e., "what . . . Joule report[ed] what alleged unidentified 'witnesses' observed." In a written opinion supporting the order denying that objection, the ALJ stated essentially what she said in denying the objection at the hearing.

As the ALJ noted and the Division now argues, the Rules of Evidence generally do not apply to contested administrative hearings. N.J.A.C. 1:1-15.1(c). Specifically, as to hearsay, N.J.A.C. 1:1-15.5(a) provides:

> Subject to the judge's discretion to exclude evidence . . . or a valid claim of privilege, hearsay evidence shall be admissible in the trial of contested cases. Hearsay evidence which is admitted shall be

accorded whatever weight the judge deems appropriate taking into account the nature, character and scope of the evidence, the circumstances of its creation and production, and, generally, its reliability.

Kevin argues the relaxation of admissibility that normally applies to administrative proceedings, however, does not apply to contested abuse or neglect hearings. He cites N.J.S.A. 9:6-8.46 for support.

By its terms, N.J.S.A. 9:6-8.46(a) applies to "any hearing under [Title Nine], including an administrative hearing held in accordance with the 'Administrative Procedure Act.'" Subsection (a) addresses four specific categories of evidence presumptively admissible in any such proceeding.[4]

---

[4] These are:

> (1) proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the responsibility of, the parent or guardian and (2) proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or guardian shall be prima facie evidence that a child of, or who is the responsibility of such person is an abused or neglected child, and (3) any writing, record or photograph, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding of any hospital or any other public or private institution or

However, Kevin cites subsection (b), which provides that "[i]n a fact-finding hearing . . . only competent, material and relevant evidence may be admitted." He contends this subsection trumps not only the administrative regulations generally applicable to contested hearings cited above, but also the Administrative Procedure Act (APA) itself. See N.J.S.A. 52:14B-10(a)(1) ("The parties shall not be bound by rules of evidence whether statutory, common law, or adopted formally by the Rules of Court. All relevant evidence is admissible, except as otherwise provided herein."). In short, according to Kevin, because hearsay is not competent evidence, it is inadmissible in contested abuse and neglect hearings before an ALJ.

---

> agency shall be admissible in evidence in proof of that condition, act, transaction, occurrence or event, if the judge finds that it was made in the regular course of the business of any hospital or any other public or private institution or agency, and that it was in the regular course of such business to make it, at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter, shall be prima facie evidence of the facts contained in such certification. . . . and (4) previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect.
>
> [N.J.S.A. 9:6-8.46(a).]

We have recognized that judicial determinations made at a fact-finding hearing "must be based on competent reliable evidence." N.J. Div. of Youth & Fam. Servs. v. J.Y., 352 N.J. Super. 245, 265 (App. Div. 2002) (citing N.J.S.A. 9:6-8.46; R. 5:12-4(d)). However, a fact-finding hearing is a defined term within Title Nine. See N.J.S.A. 9:6-8.44 ("When used in this act the term 'fact-finding hearing' means a hearing to determine whether the child is an abused or neglected child as defined herein."). That definition, standing alone might engender some confusion as to whether an administrative hearing before DCF is a "fact-finding hearing," and, therefore, within the rubric of N.J.S.A. 9:6-8.46(b)'s limitation of admissibility, i.e., "only competent, material and relevant evidence may be admitted."

However, Title Nine provides that "[u]pon completion of the fact-finding hearing, the dispositional hearing may commence immediately after the required findings are made." N.J.S.A. 9:6-8.47(a). "A dispositional hearing must be held to determine the appropriate outcome of the case." N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 399 (2009) (citing N.J.S.A. 9:6-8.50). In DCF administrative hearings there is no dispositional hearing to determine the "appropriate outcome of the case," only a determination whether a parent or guardian committed abuse or neglect.

In short, nothing suggests the Legislature intended to disrupt the intricate structure of Title Nine judicial proceedings and implicitly overrule the APA and duly enacted regulations by restricting the admission of hearsay evidence only in DCF administrative proceedings. Moreover, even if we were wrong in our analysis, the ALJ's written decision recounted Joule's testimony, but she did not mention it at all in her findings of fact and conclusions of law. The point requires no further discussion.

In the pre-hearing motion to bar certain proffered documents, Kevin's counsel sent a written objection regarding admission of substance abuse evaluations or treatment recommendations for Kevin that resulted from the Division's involvement with the case. Counsel claimed any such references were inadmissible pursuant to N.J.R.E. 407, which generally bars evidence of subsequent remedial measures as proof of negligence or culpability. The ALJ denied the objection, concluding the reports were business records, admissible pursuant to N.J.S.A. 9:6-8.46(a).

At trial, Pertesis explained that as Division supervisor, she was directly involved in making the substantiated finding of neglect against Kevin. She said that Kevin was referred for substance abuse evaluation, and treatment was recommended. Kevin's counsel objected on multiple grounds: the evidence was

13

hearsay; it violated N.J.R.E. 407; and it lacked relevancy. The ALJ overruled the objection.

We agree that the evidence was irrelevant. The issue before the ALJ was whether Kevin neglected the children on the day in question. See E.D.-O., 223 N.J. at 189 (where no actual harm befalls the child, the focus is not "the risk the parent poses . . . at the time the incident is reviewed by a fact-finder"). However, once again, other than to recount Pertesis' testimony, the ALJ did not cite it or the results of the evaluation or recommendation in her actual findings and conclusions. Any error was harmless. R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2686-19