**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3237-22

BOARD OF EDUCATION
OF THE CITY OF ABSECON,
ATLANTIC COUNTY,

     Petitioner-Appellant,

v.

BOARD OF EDUCATION
OF THE CITY OF
PLEASANTVILLE,
ATLANTIC COUNTY,

     Respondent-Respondent.

_____

Argued January 7, 2025 – Decided July 18, 2025

Before Judges Firko, Bishop-Thompson, and Augostini.

On appeal from the New Jersey Commissioner of Education, Docket No. 232-9/19.

Vito A. Gagliardi, Jr., argued the cause for appellant (Porzio, Bromberg & Newman, PC, attorneys; Vito A. Gagliardi, Jr., and Kerri A. Wright, of counsel and on the briefs; Thomas J. Reilly, on the briefs).

Ryan J. Silver, Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Education (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Ryan J. Silver, on the brief).

PER CURIAM

The Board of Education of the City of Absecon (Absecon) appeals from two final decisions issued by the New Jersey Acting Commissioner of Education (Acting Commissioner): the June 12, 2023 decision denying its motion for reconsideration of the Commissioner's May 25, 2022 order; and the May 25, 2022 decision denying Absecon's petition to sever the sending-receiving relationship with the Pleasantville Board of Education (Pleasantville) pursuant to N.J.S.A. 18A:38-13. We affirm both orders.

I.

The following facts are derived from the record. Absecon operates a pre-kindergarten (pre-k) through grade eight school district, educating approximately 860 students in Atlantic County. Absecon's grades nine through twelve students attend Pleasantville High School (PHS) pursuant to a sending-receiving relationship.

Pleasantville operates a pre-k through grade twelve school district, educating approximately 4,000 students. Pleasantville High School (PHS)

enrolls approximately 760 students from Absecon and Pleasantville. PHS is a vastly majority-minority school—a majority of its student population is comprised of minority racial groups.

On August 30, 2019, Absecon filed a petition with the Commissioner seeking to sever its sending-receiving relationship with Pleasantville. Absecon proposed to enter a sending-receiving relationship with the Greater Egg Harbor Regional School District Board of Education (Greater Egg Harbor). Pursuant to that proposed relationship, Absecon would send its high school students to Greater Egg Harbor's Absegami High School (Absegami) located in Galloway, which educates approximately 1,230 students. Absecon, dissatisfied with the educational environment of Pleasantville, contended the proposed relationship offered Absecon families "better educational choices" and "greater opportunities" for their high school students. However, the petition did not clarify whether Absecon students would be withdrawn from PHS immediately or if their transition would be phased out over time.

In support of its petition, Absecon submitted a ninety-three-page feasibility study (2019 Feasibility Study). The experts who authored the feasibility study analyzed the potential educational, financial, and racial impacts of establishing the proposed sending-receiving relationship with Greater Egg

3

Harbor based on the demographic data from 1940 to 2010 and the projected demographic data to 2040. The 2019 Feasibility Study concluded that severing the relationship between Absecon and Pleasantville would not have an "adverse educational effect," a "substantial negative financial impact," or a "negative racial impact on [PHS]" because so few Absecon students attend or have attended PHS.

Further, on September 20, 2019, Pleasantville filed an answer to Absecon's petition. In opposition to Absecon's request, Pleasantville asserted that severance would cause a "substantial negative impact on [Pleasantville's] quality of education, financial condition[,] and racial composition," and would impede its ability to "provide an opportunity for a thorough and efficient education" for its high school students. Pleasantville disputed the accuracy of the 2019 Feasibility Study and notified the Commissioner that it had retained an expert to prepare a rebuttal feasibility study. However, no rebuttal feasibility report was ever submitted.

Thereafter, the Commissioner transmitted the matter to the Office of Administrative Law (OAL) as a contested case. Following a board meeting held on January 27, 2021, Pleasantville withdrew its opposition to Absecon's petition.

The OAL returned the matter to the Commissioner to proceed as an uncontested case.

On February 23, 2021, Absecon issued a public announcement at its Board meeting concerning the severance of the sending-receiving relationship between Absecon and Pleasantville, pursuant to N.J.A.C. 6A:3-6.1, which requires a board of education to issue a public notice inviting written comments to the Acting Commissioner during a twenty-day open comment period on potential negative impacts, and allows all parties to submit replies to those comments. On March 9, 2021, Pleasantville likewise issued a public announcement at its board meeting. The DOE received a significant number of public comments, both for and against severance.

In compliance with the DOE's request, on April 19, 2021, Absecon submitted supplemental studies. Absecon provided a racial impact study dated April 2021. The expert's analysis considered the data from the 2019 Feasibility Study, along with the updated the racial and demographic impact analysis. This analysis included a review of the community demographics, as well as historical and projected enrollment data for Absecon, Greater Egg Harbor, and Pleasantville, covering the 2015-16 to 2019-20 school years. The study revealed the racial composition of pre-k to grade eight Absecon students had been

5

"relatively stable." During the 2019-2020 school year, twenty-six or 3.28 percent of Absecon students attended PHS. For the 2019-20 school year, Pleasantville was effectively an "all-minority school, as 98.42 percent of all students were non-White."

The study explained that severing the sending-receiving agreement between Absecon and Pleasantville would have no discernible racial impact on students from either school. The study concluded that a "new sending-receiving agreement between Absecon and Absegami is not only the best alternative of those presented with respect to racial impact but will not result in any negative racial impact on the students of the respective districts."

Absecon submitted an updated feasibility study dated April 19, 2021, which also addressed the racial impact of severing the sending-receiving relationship. This study analyzed the racial composition of Absecon and Pleasantville from the census decennial data from 1990, 2000, 2010, the racial data estimates from January 2014 through December 2018, and the estimated enrollment projections from 2020-21 to 2024-25. The study revealed that twenty-six to forty-three Absecon students attended PHS per year, resulting in "nearly constant" student enrollment, and the racial composition of PHS has been "almost entirely minority (98-99 percent) in the last five years."

A-3237-22

The projected racial composition for the next five years was not computed because the number of high school students from Absecon was "so small" that the study would not "produce a conclusion based on sound statistical practice." The study concluded that if Absecon students were no longer enrolled in PHS, "there would be no negative racial or educational impact on the [remaining] students at [PHS]."

The financial impact study, also dated April 2021, updated the initial 2019 Feasibility Study and encompassed two additional years of enrollment and financial data. The study concluded that "seven of the eight districts involved will see a reduction in their annual school tax levy compared to the status quo" should Absecon's sending and receiving relationship with Pleasantville cease. Additionally, a budget adjustment based on the actual trend, compliance with the state auditor's recommendations based on the appointment of a 2013 fiscal monitor, and use of the general fund balance would mitigate the loss of Absecon students and tuition from PHS. The study also concluded that following the state average staffing levels would offset $115,000 for each of the first four years of the severance of the agreement with Absecon; rather than an immediate reduction of $460,000.

Lastly, Absecon submitted a supplemental educational impact study, which also updated the feasibility report. The experts opined that "overall diversity [would] increase under the [proposed] sending-receiving relationship between Absecon and Greater Egg Harbor." The experts agreed with the April 2021 racial and demographic report maintaining "there [would] be no discernible negative impact on diversity at [PHS] given that on average only one to four [W]hite students from Absecon attended [PHS] school each year." The study found that "Absegami [] is preferential as a [nine]-[twelve grade] destination for the Absecon pupils, due to geographic proximity . . . in Galloway Township . . . and the close connections the communities already share."

The study also highlighted Pleasantville's negative incidents committed by "either a staff member, student, or community nature which could easily affect the climate in [PHS] and in [Pleasantville]." The study further noted DOE's and the state auditor's investigation into Pleasantville's fiscal practices, as well as the appointment of two state monitors to oversee Pleasantville's financial management.

The study concluded that there "would be no adverse educational effect" upon Pleasantville should the petition be granted. However, denying the

severance petition would "hurt" Absecon's "economically disadvantaged" students who make up one-half of Absecon's student population.

On June 11, 2021, Pleasantville notified the Acting Commissioner that the Board voted to rescind its prior withdrawal of its opposition to Absecon's petition. Three days later, on June 14, 2021, Absecon submitted the updated tables from the racial and demographic impact on the severance of the sending-receiving agreement, which included enrollment data from the 2020-21 school year. The tables demonstrated that severance of the existing sending-receiving relationship would not remove all White students from PHS; five White students from Pleasantville would have attended PHS in 2020-21. Accordingly, Absegami "continues" to be more racially diverse because of the declining White population and the growing Hispanic and Asian populations.

In the May 25, 2022 final agency decision, the Acting Commissioner declined to approve Absecon's unopposed petition to severe the sending-receiving relationship. The Acting Commissioner conducted a "comprehensive" review of the record, which included the public comments, the 2019 Feasibility Study and supplemental studies, the parties' submissions, and the June 2021 updated enrollment data.

A-3237-22

The Acting Commissioner also noted that in 1988, Absecon's previous request to sever the sending-receiving relationship was denied based on the finding that the removal of one-third to one-half of the White population in Pleasantville, which had an overwhelming Black to White student population, would have had a significant negative effect on the racial composition of PHS.

After citing N.J.S.A. 18A:38-13, which requires the approval of the Commissioner before a board withdraws from a voluntary sending-receiving relationship, and the governing case law, the Acting Commissioner further explained that based on the limited total number of White students in PHS compared to the entire student body, removal of the Absecon students would result in a proportional change of less than one-half a percent of the total student body. "However, when considering the gross population of White students, it would result in a loss of [four] of [five] total [W]hite students, or an [eighty] percent reduction in the [W]hite population of Pleasantville." Similarly, in the 2020-21 school year, the loss of the six out of eleven [W]hite students "would result in a 54.5 percent in the gross population of [W]hite students at [PHS]." The decision articulated the conclusion:

> The [Acting] Commissioner cannot find that the loss of [fifty] to [eighty] percent of Pleasantville's [W]hite population is insignificant. The loss of [fifty] to [eighty] percent of the [W]hite population is larger

10

than the [forty-five] percent loss in [an unpublished] case or the [sixteen] percent loss in <u>Englewood Cliffs</u>,[1] both of which resulted in denial of the applications for severance. While the proportional change of less than a percent may seem de minimis given the few Absecon students leaving [PHS], the [Acting] Commissioner cannot ignore the substantial negative effect withdrawal would have on the gross population of [W]hite students at [PHS].

Thereafter, Absecon moved for reconsideration.[2] It argued that "the Commissioner's decision ignored critical and uncontested evidence, rested on obsolete factual data, and was in critical aspects factually incorrect." Specifically, Absecon asserted that "the Commissioner never recognized the significance of the phase-out withdrawal of Absecon's students and never accounted for the increasing White population of Pleasantville's elementary and middle schools."

On June 12, 2023, the Acting Commissioner denied Absecon's motion for reconsideration. At the outset, the Acting Commissioner explained:

> Absecon does not argue that the enrollment data on which the Commissioner based her decision was inaccurate. Instead, Absecon is simply expressing its disagreement with the Commissioner' May 25, 2022 decision. The gradual phase out of Absecon's students

---

[1] <u>Bd. of Educ. of Englewood Cliffs v. Bd. of Educ. of Englewood</u>, 257 N.J. Super. 413, 461 (App. Div. 1992), <u>aff'd</u>, 132 N.J. 327 (1993).

[2] Absecon's motion for reconsideration is not included in the record on appeal.

does not impact the Commissioner's decision, which was based on the most recent enrollment information for [PHS]. Regardless of whether students are removed at once or gradually, the gross population of [W]hite students at [PHS] would still decrease significantly in total, causing a substantial negative impact on the racial composition of [PHS]. Additionally, the potential increase in [W]hite students entering high school is speculative and does not negate the fact that the removal of Absecon's [W]hite students from [PHS] will still result in a substantial decrease in the [W]hite population of a predominantly minority district, which cannot be considered de minimis.

Absecon does not argue that there is newly discovered evidence, a newly ascertained misrepresentation, or the reversal of a prior judgment on which this matter was based. Accordingly, it is not necessary to address those components of N.J.A.C. 6A:3-1.5(b)(2).

Absecon now appeals.[3]

## II.

On appeal, Absecon presents the following arguments for our consideration. Absecon first argues the Acting Commissioner should have granted its unopposed application. It contends (1) the undisputed facts show there will be no substantial negative impact or racial impact based on the gradual

---

[3] On December 16, 2024, we denied Absecon's motion to supplement the record on appeal, which sought to introduce student demographics data from the 2022-23 and 2023-24 school years.

withdrawal and the increasing White student population at PHS; (2) the decision ignores North Haledon,[4] which provides the proper analysis for severance under N.J.S.A. 18A:38-13 and the undisputed demographic evidence; and (3) the unrebutted evidence is sufficient to allow severance.

Absecon next argues that the final agency decision is arbitrary and capricious because the Acting Commissioner "ignored relevant and unrebutted evidence" concerning the student populations and demographic trends of both districts. It contends the Acting Commissioner substituted her own standard.

Lastly, Absecon argues the decision is "unreasonable" because it created an "arbitrary" and "impossible" standard by "holding that any loss of White students from a predominately minority district is intolerable." Absecon contends the Acting Commissioner "impermissibly expanded" her role in granting severance application, which is not contemplated by N.J.S.A. 18A:38-13 or warranted by the unrebutted facts.

Our review of a final agency decision is limited. N.J. Dep't of Child. & Fams. v. E.L., 454 N.J. Super. 10, 21-22 (App. Div. 2018); see also In re Stallworth, 208 N.J. 182, 194 (2011). "[A]n appellate court reviews agency

_____

[4] In re Petition for Authorization to Conduct a Referendum of N. Haledon Sch. Dist. from the Passaic. Cnty Manchester Reg'l High Sch. District (North Haledon III), 181 N.J. 161 (2004).

decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (citing In re Stallworth, 208 N.J. at 194). Thus, "the Commissioner's decision . . . is entitled to affirmance so long as the determination is not arbitrary, capricious, or unreasonable, which includes examination into whether the decision lacks sufficient support in the record or involves an erroneous interpretation of law." Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020) (citing Zimmerman, 237 N.J. at 475).

In determining whether an agency action is arbitrary, capricious, or unreasonable, we consider "(1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing In re Stallworth, 208 N.J. at 194). "The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger." Parsells v. Bd. of Educ. of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022) (citing Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011)).

"[A]n appellant carries a substantial burden of persuasion, and the agency's determination carries a presumption of reasonableness." Dep't of Child. & Fams. v. C.H., 414 N.J. Super. 472, 479-80 (App. Div. 2010) (citing Gloucester Cnty. Welfare Bd. v. State Civ. Serv. Comm'n, 93 N.J. 384, 390-91 (1983)). "We extend substantial deference to an 'agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible' based on the agency's expertise." N.J. Dep't of Child. & Fams. v. R.R., 454 N.J. Super. 37, 43 (App. Div. 2018) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004)). "[I]f substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988)).

## III.

Absecon argues the Acting Commissioner erred by denying its unopposed application to sever the sending-receiving relationship with Pleasantville. Specifically, Absecon contends the undisputed proofs establish that there will be no substantial negative impact on PHS given the proposed phased-out

withdrawal of Absecon's students and the projected increase in PHS's White student population. We are not persuaded.

N.J.S.A. 18A:38-13 sets forth the criteria for severing a sending-receiving relationship between school districts. The statute provides that in deciding to grant or deny a petition to sever a sending-receiving agreement, "the [C]ommissioner shall make equitable determinations based upon consideration of all the circumstances, including the educational and financial implications for the affected districts, the impact on the quality of education received by pupils, and the effect on the racial composition of the pupil population of the districts." N.J.S.A. 18A:38-13. After making such determinations, the "[C]ommissioner shall grant the requested change in designation or allocation if no substantial negative impact will result therefrom." Ibid.

In interpreting the term "substantial negative impact" in N.J.S.A. 18A:38-13, our Supreme Court affirmed the holding in Englewood Cliffs, where we stated the statute "is not a traditional balancing" test. 257 N.J. Super.at 461. We explained:

> The act lays out a series of factors to be considered by the Commissioner as part of a feasibility study including: the educational (offerings) and financial (budgetary) implications for both districts, the impact on the quality of education in both districts, and the effect on the racial composition of the pupil population

in both districts. The Commissioner's responsibility is to reach an "equitable" determination—one that is fair to both districts—keeping in mind his [or her] responsibility as the ultimate educational authority in the State.

[Id. at 462.]

Thus, "[t]he focus of the Commissioner's inquiry is whether a substantial negative impact exists at all; if it does, severance is to be denied." Ibid.

Absecon argues that North Haledon III provides the proper analysis for severance. It argues that the Acting Commissioner should have focused solely on the percentage drop in the proportion of White students and not the percentage loss of the gross White student population at PHS. Absecon misapplies North Haledon III.

In North Haledon III, the Court reversed the grant of North Haledon's petition to withdraw from the Passaic County Manchester Regional High School District. The Court found that "demographic trends [were] contributing to a steady decrease in the number of [W]hite students attending Manchester Regional, and that North Haledon's withdrawal [would] accelerate this trend." 181 N.J. at 183. The Court affirmed and modified our judgment, explaining that "[we] held that a nine percent decrease in the [W]hite student population was not a 'negligible impact'" and reversed the Board of Review. Id. at 164-65 (citing

17

In re Petition for Authorization to Conduct a Referendum on Withdrawal of N. Haledon Sch. Dist. from the Passaic Cnty. Manchester Reg'l High Sch. Dist. (North Haledon II), 363 N.J. Super. 130, 139 (App. Div. 2003)). The Court further explained "it is not really possible to establish a precise point when a thorough and efficient education is threatened by racial imbalance." Ibid. (citing Booker v. Bd. of Educ. of Plainfield, 45 N.J. 161, 180 (1965)).

Similarly, in Englewood Cliffs, the Court affirmed the State Board of Education's denial of Englewood Cliffs' petition to withdraw from the sending-receiving relationship due to the substantial negative impact on the racial balance in the district. 132 N.J. at 327. Here, the Acting Commissioner properly assessed the percentage change of the gross White student population rather than the percentage change of White students compared to the entire student body. Accordingly, Absecon's argument that the data "unequivocally" showed that there was no racial impact based on the gradual withdrawal of White students is not supported by the record.

Applying these well-settled standards, we discern no legal basis to disturb the Acting Commissioner's final decision. Based on the record, we hold the Acting Commissioner properly applied the standards articulated in N.J.S.A. 18A:38-13 and the applicable principles articulated in Englewood Cliffs and

North Haledon III.  While not specifically citing North Haledon III, the Acting Commissioner concluded there was a substantial negative impact to the racial balance of PHS.

We are convinced that the loss of "[fifty] to [eighty] [%] of Pleasantville's overall [W]hite population" is not insignificant based on the 2019-20 and 2021-22 school years.  The record shows the severance of the sending-receiving relationship with Pleasantville would result in a 54.5 percent reduction in the gross population of White students at PHS.  Accordingly, "[a] substantial negative impact in one category necessarily implicates an overall educational quality issue." Englewood Cliffs, 257 N.J. Super. at 462

We, therefore, reject Absecon's argument that the record shows there would be no substantial negative impact to the racial balance of PHS, and that the Acting Commissioner failed to consider the effect of its phase out plan.  We conclude that the Acting Commissioner's determination that a substantial negative impact exists is supported by substantial credible evidence in the record, and the decision to deny severance is neither arbitrary, capricious, nor unreasonable.

A-3237-22

IV.

Finally, we reject Absecon's argument that the Acting Commissioner created an "impermissibly" expanded role that is not contemplated by the enabling legislation nor warranted by the unrebutted facts. The Acting "Commissioner has 'jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws,' N.J.S.A. 18A:6-9, and supervisory authority over sending-and-receiving relationships." Edmondson v. Bd. of Educ. of Elmer, 424 N.J. Super. 256, 260 (App. Div. 2012) (citing Bd. of Educ. of Merchantville v. Bd. of Educ. of Pennsauken, 204 N.J. Super. 508, 513 (App. Div. 1985), certif. denied, 103 N.J. 469 (1986)). "The [Acting] Commissioner's responsibility is to reach an 'equitable' determination—one that is fair to both districts—keeping in mind [his or her] responsibility as the ultimate educational authority in the State." Englewood Cliffs, 257 N.J. Super. at 462 (citing N.J.S.A. 18A:38-13).

Having reviewed the record, we conclude the Acting Commissioner properly exercised her discretion in denying severance based on a finding of a substantial negative impact. Absecon cites neither case law nor statutory authority to support its argument that the Acting Commissioner exceeded her statutory responsibility.

20

V.

Absecon's merits brief did not address the denial of its motion for reconsideration of the May 25, 2022 final agency decision. An issue not raised in an initial appellate brief is not properly before this court. Bernoskie v. Zarisnky, 344 N.J. Super. 160, 166 n.2 (App. Div. 2001). By failing to raise this argument in its initial brief, Absecon has waived this contention. See Bacon ex rel. G.P. v. N.J. Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015).

Nevertheless, we agree with the agency's determination that the motion was an expression of Absecon's disagreement. The agency reaffirmed its findings and concluded that "[r]egardless of whether students are removed at once or gradually, the gross population of [W]hite students at [PHS] would still decrease significantly in total, causing a substantial negative impact on the racial composition of [PHS]." We conclude there was no abuse of discretion by the agency on reconsideration of the May 25, 2022 order and thus, we affirm the June 12, 2023 order denying reconsideration. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

To the extent we have not specifically addressed them, any remaining arguments raised by Absecon lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3237-22